## Case No. 6,782.

### HOWELL v. SAULE et al.

[5 Mason, 410.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1829.

VENDOR AND PURCHASER—CONVEYANCE BY SPECIFIC BOUNDARIES.

1. A conveyed to B, by deed, a certain piece of land by specific boundaries, and then added, "it being the same land given by my honoured mother to him the said B, by her last will and testament, said land containing about five acres."

2. The devise in the will was of "a piece of plain land, of about four or five acres, lying a little northwestwardly from the aforesaid lots, and reaching back to a ditch."

3. It was *held*, that the latter clause did not control the specific boundaries in the deed, even supposing the will would admit of narrower limits, or was of doubtful construction.

·[Cited in Lee v. Follett. 29 Vt. 118; Drury v. Morse, 3 Allen. 446. Distinguished in Wilson v. Underhill, 108 Mass. 303.]

Ejectment [by Martha Howell against Henry Saule and others]. Plea, the general issue. Both parties claimed the estate in question, under Martha Brown, wife of Elisha Brown. On the 1st of July, 1760, she, being then a feme covert, made her will, which upon her death was proved in the probate court in October, 1765; and among other items, she made the following devise. "Item, I give and devise to my son, Jeremiah Brown, two small lots, part of the aforesaid estate. lying southwestwardly from the southwest end of the back street of said Charlestown (part of Providence). number the first and second lots on said map (a map. before referred to in her will); also a piece of plain land, of about four or five acres. parcel of said estate. lying a little northwestwardly from the aforesaid lots, and reaching back to a ditch, (which) is a boundary line of lands assigned for dower to the widow Sarah Smith, to be and remain to him and his heirs for ever." Her will being, by reason of her coverture, invalid to pass real estate. the devise became void; and the whole estate descended, according to the then law of Rhode Island, to her eldest son, John Brown, as her heir at law. John Brown, on the 19th of January, 1768. with a view, (as it should seem,) to carry into effect his mother's will in this respect. made a deed to his brother, Jeremiah Brown, and thereby granted to him "one certain piece or parcel of land, lying and being situated in Providence aforesaid, in the southwesterly part of a place called Charlestown. being part of the mill estate. joining easterly on Daniel Smith's land, southerly on Robert Gibbs's land. westerly on Samuel Thurber's land. northerly on an old ditch on my own land; it being the same land given to him, the said Jeremiah Brown, by my honoured mother. Martha Brown. deceased, in and by her last will and testament, said

1 [Reported by William P. Mason, Esq.]

land containing about five acres." The old map referred to in the will bears date in 1754, and was produced and admitted at the trial. without objection. It contains a series of lots on the eastern side of the land, numbered from No. 1 to 19, &c., beginning at the southern side, and proceeding northerly. The action was for a parcel of land called No. 7, in the lots laid off on the map, and the plaintiff claimed title to it under John Brown, as not having passed by his deed in 1768. The defendants claimed title to the premises under Jeremiah Brown, as having passed to him by the same deed. The whole controversy turned upon the true construction of the terms of that deed, as connected with the will of Martha Brown.

R. W. Greene, for plaintiff.
Mr. Pratt, for defendants.

STORY, Circuit Justice. It is admitted, that the boundaries stated in the deed of 1768, from John Brown to his brother Jeremiah, include the premises now demanded, if we stop at the clause in that deed, which refers to his mother's will. But it is contended by the demandant, that these boundaries are controlled by this last clause, so as to include such land only, as the mother devised to Jeremiah. The whole piece of plain land contains about five acres; but cut down, as the demandant contends for, it will include only three and one half acres.

Let us, then, first consider the terms of the devise made by the mother. After devising two lots. she proceeds to devise a piece of "plain land, of about four or five acres, parcel of said estate, lying a little northwestwardly from the aforesaid lots, and reaching back to a ditch," &c. The description is obviously incomplete, giving, correctly enough, the general direction in which the land lies, and bounding it only on the northwesterly side by a ditch, the same boundary, which is given in the deed. The only additional circumstance stated in the will, to help the generality of this description, and to enable us to ascertain the extent of the land devised, is the statement of the number of acres it contains. It is stated to contain "about four or five acres." So that if we adopt the construction of the demandant. the devisee takes less than the testatrix supposed; if we follow that of the tenant, he takes no more than the testatrix supposed. In this respect, then, the deed comports with the apparent intent of the will. But suppose the quantity intended to pass by the will were doubtful, the parties had a right to give it such an interpretation as in their judgment best comported with the mother's intentions. They adopted the interpretation, which was most favourable to the devisee. If, as has been supposed at the bar, the grantor intended to carry into effect the object of his mother, his deed has reduced to certainty, that which the argu-

ment supposes before to have been left somewhat in uncertainty. It was undoubtedly competent for the grantor to adopt such a liberal construction. In the interpretation of deeds the general rule is, to construe the uncertain, as nearly as possible, in conformity to that, which is certain. If the court can find out the general intent, it will carry that into effect, notwithstanding any repugnancy in another part of the description. A fortiori, the court will give effect to that, whch is certain in description, rather than leave the deed inoperative, because there are other references in it, obscure, imperfect, or inexact.

But in the present case, we do not think, that the deed furnishes any real grounds for debate. The grantor has in his deed stated with certainty the exact boundaries and quantity of the land, which he conveys to his brother. He then adds, that it is the same land devised by his mother. This is not a clause controlling the legal effect of the preceding description, or intended to narrow its purport. It is a mere explanatory clause, expressive of his view, that the land is the same, which was devised by his mother. He does not say, that he grants what was devised by her, and no more; but he grants a certain piece of land, containing five acres, by specific boundaries, and then adds a statement of what he supposes to be a fact. Suppose none of the land had been devised in his mother's will; would the grant have been utterly void? Certainly not. We think there is no repugnancy between the will and the deed; and that in the most favourable view for the demandant, the parties have put a construction upon the terms of the will, that it included the five acres specified in the boundaries of the deed. But if this were not sufficient, still the deed operated as a grant of the land included in the specific boundaries, and the subsequent clause ought not to control or narrow it. It is not immaterial to add, that the subsequent occupation and claims by the respective claimants under the grantor and grantee in that deed have been, as far as the written evidence goes. in perfect conformity with this construction of the terms of the deed.

The plaintiff discontinued her suit.