HENRY WILSON *vs.* OLIVER UNDERHILL.

A. conveyed to B. "two lots of upland and meadow, bounded on the county road, land of C., deceased, land of D., and X. river: it being the same mentioned in a deed from F. to G.," eleven years before. The granted premises were bounded in the same terms in that deed, and also in the mesne conveyance from G. to A., save that C. was not described as deceased. The two lots were separated from each other by a lot once owned by C.'s wife and occupied by him in her life. The upland lot was nearly square, adjoined the river on the east, D.'s land on the south, the road on the west, and the lot formerly of C.'s wife on the north. The meadow lot was triangular; adjoined the river on the northeast, the lot formerly of C.'s wife on the south, and the road on the northwest; and inclosed a knoll of woodland which was owned by C. at the time of F.'s deed to G., but three fourths of which had come to A. by inheritance before his deed to B. *Held*, that A.'s deed to B. did not convey the woodland.

WRIT OF ENTRY to recover a small parcel of woodland in Ipswich. Trial in the superior court, before *Brigham*, C. J.,

who by consent of the parties made a report of the case before verdict, for the determination of this court, the substance of which is stated in the opinion. The plan of the land is copied in the margin.

*W. C. Endicott*, for the demandant.

*J. C. Perkins*, for the tenant.

GRAY, J. The decision of this case turns upon the construction of the deed by which the tenant in 1834 conveyed to the demandant " two lots of upland and meadow, bounded on the county road, land of Jeremiah Underhill, deceased, Benjamin Patch, deceased, and Miles River, so called : It being the same mentioned in a deed from Oliver Appleton to Tristram Appleton, and registered in the register's office May 23, 1823." The description of the granted premises in the deed thus referred to, as well as in the mesne conveyance in 1832 from Tristram Appleton to the tenant, is precisely similar, except in omitting the word " deceased " after the names of Jeremiah Underhill and Benjamin Patch.

In order to understand and apply the words of description in these deeds, it is necessary to refer to the plan put into the case, and the facts agreed by the parties at the trial. By that plan it appears that the granted premises consisted of two lots of land, (separated from each other only by a lot formerly owned by the wife of Jeremiah Underhill, and occupied by him during her life,) and bounded on the east and northeast by Miles River, on the northwest and west by the county road, and on the south by land of Benjamin Patch.

The only call in the deed, as to which there is any dispute, is the land of Jeremiah Underhill. The demandant contends that this call is fully satisfied by the land owned by Jeremiah Underhill's wife and occupied by him during her life, which bounds the upland lot on the north and the meadow lot on the south. The tenant contends that this call also excludes the demanded premises, called in some earlier deeds "the island of wood in the meadow," and marked "oak wood" on the plan, situated in the midst of the meadow lot, and surrounded by it on all sides.

At the time of the deed from Oliver Appleton to Tristram Appleton in 1823, this woodland was owned by Jeremiah Underhill, and Oliver Appleton had no title to it. At the time of the deed from the tenant to the demandant in 1834, Jeremiah Underhill was dead, and his son, the tenant, owned three undivided fourths of this woodland by inheritance, one half directly from his father, and one fourth through his only sister, who died after his father.

The difficulty of ascertaining the true construction of the deed between the parties to this action arises from the peculiar shape of the lands and the very general terms of the description. The description does not indicate the relative position of the monuments to the premises granted, nor whether either of them adjoins the premises in one continuous line only, or at two or more separate places. And upon the construction for which either party contends, the land occupied by Jeremiah Underhill and owned by his wife is interposed between the two lots granted; and the boundary upon Miles River, as well as that upon the county road, is thus broken into two separate parts. Lands referred to as bounding lands granted cannot be deemed to be included in the grant, unless the deed would otherwise be unintelligible. *Bond* v. *Fay,* 8 Allen, 212. And where the premises granted are of a substantially annular shape, the lands within the smaller circle which forms the boundary towards the centre are as much excluded as those without the larger circle which forms the outward boundary of the circumference. The question then is, Do the terms of this grant, as applied to the facts of the case, bound the meadow by the woodland which it surrounded ?

We can have no doubt that the description in question, as used in the deed of 1823 from Oliver Appleton to Tristram Appleton, did bound the granted premises by, and thus exclude, the woodland ; because it was at that time the land of Jeremiah Underhill only, and in a more absolute and perfect sense than even the land between the two lots granted, to which he had no title except in right of his wife.   At the time of the deed of 1834 from the tenant to the demandant, the tenant indeed owned three fourths of the woodland, not however (like the meadow around it) by grant from the Appletons, but by inheritance from Jeremiah Underhill, the former owner.   And we are of opinion that the description in the deed of 1834, by " land of Jeremiah Underhill, deceased," must have the like effect as the corresponding description in the deed of 1823, to which the last deed expressly refers, and must exclude the woodland.   The description in the former deed, repeated in terms in the later one, must retain the same meaning in this deed which it had in that.   The case is distinguishable from those in which a particular description in a later deed has been held not to be controlled by a general reference to a former deed containing a different and more restricted description. *Howell* v. *Saule*, 5 Mason, 410.   *Whiting* v. *Dewey*, 15 Pick. 428. *Ide* v. *Pearce*, 9 Gray, 350.

The result is, that, according to the terms of the report on which the case was reserved, there must be

*Judgment for the tenant.*