# CHARLESTON.

CRIM *et al.* *v.* O'BRIEN *et al.*

Submitted March 1, 1910.    Decided November 14, 1911.

1. REFORMATION OF INSTRUMENTS—*Mistake in Deed.*

   Before equity will reform a deed, on the ground of a mistake, it must be established by clear proof that the mistake was mutual between grantor and grantee.    (p. 759).

2. DEEDS—*Construction—Description of Land.*

   If a grantor describe the land intended to be conveyed by his deed, only in general terms, and then make reference to another deed of conveyance for the same land which contains a more certain description of it by boundary lines and corners, for the purpose of a more definite description, he thereby adopts such lines and corners as a part of the description of the land which he conveys.    (p. 758).

3. SAME.

   If two inconsistent descriptions of land, intended to be conveyed, are contained in a deed of conveyance, one general and indefinite as to boundaries, and the other specific as to boundary lines and corners, the latter description will prevail over the former.    (p. 758).

Appeal from Circuit Court, Barbour County.

Bill by Edward H. Crim and Cora M. Peck against Daniel O'Brien and others.    Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*W. T. Ice, Jr.,* for appellants.

*Wm. T. George,* for appellees.

WILLIAMS, PRESIDENT.

E. H. Crim and Cora M. Peck, devisees of J. N. B. Crim, deceased, brought a suit in equity in the circuit court of Barbour county against Daniel O'Brien and others for the purpose of correcting what is alleged to be a mistake in the description of a certain tract of land intended to be conveyed by them as the

devisees and heirs of J. N. B. Crim to said O'Brien, on the ground that the mistake was a mutual one. On the 29th of September, 1908, the court heard the cause upon the pleadings and evidence, and denied plaintiffs relief and dismissed their bill, and they have appealed.

The deed sought to be corrected is dated May 3, 1906, and describes the land conveyed in the following language, to-wit: "all that certain tract or parcel of 645 acres of land, more or less, situate on the west side of the Tygarts Valley River, in Valley District of Barbour county, West Virginia, owned by the said J. N. B. Crim and devised to said devisees, parties of the first part, by his last will and testament, which is duly probated in the office of the Clerk of the County Court of said county in Will Book No. 2, and the same land theretofore conveyed to the said J. N. B. Crim by Melville Peck, Special Commissioner, in the Chancery Cause of J. N. B. Crim vs. Melville N. O'Brien and others, lately pending in the circuit court of Barbour county, by deed which is duly recorded in said County Clerk's office in Deed Book No. 47, at page 405, and being the same tract of land theretofore conveyed to said Melville N. O'Brien by Benjamin Rich and others, by deed dated November 12th, 1883, which is recorded in said County Clerk's office, in Deed Book No. 23, at page 354, and therein described as containing 795 acres, except 150 acres thereof, now owned by Daniel O'Brien, which was devised to him by the last will and testament of one, Hannah O'Brien, deceased, to all of which said several deeds, reference is here made for a more particular description of the said tract of 645 acres of land, more or less, hereby conveyed as aforesaid, but this is a conveyance in gross, not by the acre."

The 150 acres excepted is not involved.

A brief history of the title to this, and other adjoining tracts of land, is essential to a clear understanding of the question here involved. The 645 acre tract is a part of a tract of 795 acres, surveyed and entered by Daniel O'Brien and Enoch Hall in 1858. They did not obtain a grant for it, but, on discovering that it lay within the boundary of a tract of 100,000 acres owned by Benjamin Rich and others, Melville N. O'Brien, the son of Daniel O'Brien, procured a conveyance thereof from them

to himself, on the 12th of November, 1883. That deed described the 795 acres by metes and bounds, and as "being the same land embraced in a survey made for Enoch Hall and Daniel O'Brien dated the 29th of April, 1858." In 1858, Daniel O'Brien conveyed to Bridget McGinnis, by metes and bounds, 243¼ acres, a part of which lies within the bounds of the Rich deed to M. N. O'Brien. That Daniel O'Brien did not then have title is not material, inasmuch as the controversy relates only to the question of identification by description. In 1883, Bridget McGinnis divided the 243 acre tract, and conveyed 147 acres to Patrick McGinnis, and the balance to Bridget Caughlin. These two tracts are known in the suit as the Caughlin and the McGinnis tracts. The former is not claimed by any of the parties to the suit. But the boundary lines of the Rich deed to Melville N. O'Brien includes 13.8 acres of the McGinnis tract. The 13.8 acres is the bone of contention, plaintiffs contending that it was included within the description of the boundaries of their deed to Daniel O'Brien for the 645 acres, by mistake, and O'Brien denying that there was such mistake.

At the time they made the deed to O'Brien, plaintiffs were the owners of both the 645 acres, and the McGinnis 147 acre tract, having acquired title to the latter tract by judicial sale, and a commissioner's deed, made in a suit against Patrick McGinnis by his lien creditors, and title to the former by a judicial sale, and commissioner's deed, made at a later time in a suit against M. N. O'Brien by his lien creditors. Melville Peck was the commissioner to make deed in the latter suit, and in 1901 did make deed to J. N. B. Crim the purchaser of the 645 acres. Said commissioner, in his deed, did not describe the land by metes and bounds, but only generally, as "being the land described in the deed of Benjamin Rich, &c., to said O'Brien, dated Nov. 12, 1883, and of record in the proper office in Deed Book 23, page 354, except 150 acres thereof now owned by said Hannah O'Brien, containing 645 acres, more or less, being the home place of M. N. O'Brien and Daniel O'Brien."

By the testimony of Alva Wolverton who surveyed the lines of the Rich tract, and also the lines of the McGinnis and the Caughlin tracts, and made plats thereof which are parts of the record, it appears that the Rich tract includes 13.8 acres of the

69 W. Va.

McGinnis tract, and also a considerable portion of the Caughlin tract, but how much of the latter tract is included does not appear, nor is it material. The 13.8 acres is, therefore, a part of both the Patrick McGinnis tract and the 645 acre tract, to both of which tracts plaintiffs had title at the time of making the deed to Daniel O'Brien for the 645 acres.

At the time plaintiffs sold this tract to Daniel O'Brien a number of suits were pending, in which the Crims and O'Briens were interested: one suit styled Nancy O'Brien vs. J. N. B. Crim and others, the object of which was to cancel certain judgments recovered by said Crim against Melville O'Brien, Hannah O'Brien and Wm. S. O'Brien; another suit brought by M. N. O'Brien against J. N. B. Crim and others, the object of which was to establish a trust between M. N. O'Brien and said Crim, in relation to the 645 acres of land; and still another suit, styled State of West Virginia vs. W. F. S. Auvil and others, one object of which was to sell the 645 acres, as forfeited to the state for non-payment of taxes. It was for the purpose of compromising and settling these suits that the sale and conveyance of the 645 acres was made by the plaintiffs to Daniel O'Brien. J. N. B. Crim had died testate, devising the land to plaintiffs. On the 30th of April, 1906, the executors and devisees of J. N. B. Crim, deceased, and Daniel O'Brien and M. N. O'Brien, acting by their attorney in fact, Samuel V. Woods, made a written contract which recites that Daniel O'Brien and J. N. B. Crim had both filed petitions in the suit last above named, each claiming the right to redeem the 645 acres of land, that it was agreed that the title to the 645 acres should be redeemed by the devisees of J. N. B. Crim, and that it should then be by them conveyed to Daniel O'Brien, in consideration of $10,000. The $10,000 was paid and the land was conveyed to Daniel O'Brien, pursuant to that written agreement which describes the land as follows: "all their (plaintiffs') right, title and interest, whether now owned or hereafter acquired in said redemption proceedings, in said suit as aforesaid or in any other suits or proceedings, touching the same, in and to the said tract of 645 acres of land, which is situate in Valley district, of said county, on the Tygarts Valley and Middle Fork rivers, which is the same land heretofore conveyed by Melville

Peck, special commissioner, in the chancery cause of *Crim* vs. *Melville N. O'Brien, &c.*, lately pending in said circuit court to said J. N. B. Crim, deceased, by deed which is duly recorded in the county clerk's office of Barbour County."

The bill does not aver that there is any mistake in the description in the contract, neither does it aver fraud. Hence, the written contract is the best evidence of what grantors intended to convey by the deed to be made in consummation thereof, and parol evidence is not admissible to vary it. The description of the land in the deed is substantially the same as in the contract, they vary a little in verbiage, but they both describe the same identical tract of land. Both descriptions are general, it is true, but they both refer to the Melville Peck commissioner's deed to Crim, for description, and, by reference to that deed, we find that it contains a reference to the Benjamin Rich deed to M. N. O'Brien, for description, and, reading that deed, we find it describes the land by metes and bounds, by lines and corners. The deed which the bill prays to have reformed, describes the land by direct reference to both the Peck commissioner's deed and the Benjamin Rich deed, for the express purpose of *"a more particular description of the said tract of 645 acres of land."* Thus, by reference to the Rich deed, the grantors have given a description of the land by metes and bounds. It is the only deed in the chain of title which does give courses and distances, and plaintiffs have adopted the particular description given in that deed, by referring to it for description. And Wolverton's survey and map, read in connection with his testimony, locates the boundary lines, and shows them to contain 13.8 acres of the McGinnis tract. Therefore, plaintiffs cannot now be heard to say that it was not their intention to include that portion of the McGinnis tract in their deed to Daniel O'Brien. General description must yield to particular description, when there is discrepancy. Hence, such general description of the land, as "the home place of M. N. O'Brien and Daniel O'Brien," must yield to the description by boundary lines found in the Rich deed. *Knox* v. *South Penn Oil Co.*, 68 W. Va. 362; 13 Cyc. 631; Tiedeman's Real Prop., section 592. But the description, "the home place of M. N. O'Brien and Daniel O'Brien," is not found in plaintiffs' deed to Daniel O'Brien. That de-

scription is found only in the deed from Melville Peck, commissioner, to J. N. B. Crim, and the fact that grantors did not use those words of general description in their deed to Daniel O'Brien, is a circumstance which would seem to indicate that they did not mean to so limit the quantity of land which they were conveying, because they owned both the O'Brien home place and the McGinnis tract adjoining it. When reference is made in a deed, containing only a general description of land, to another deed or plat, which contains description by metes and bounds, for the purpose of describing the land intended to be conveyed, it has the same effect as if such particular description in the deed or plat referred to were incorporated in the deed. 13 Cyc. 632; Tiedeman's Real Prop., sec. 605; *Snooks* v. *Wingfield,* 52 W. Va. 441; *Bank* v. *Stewart,* 93 Va. 447.

O'Brien denies that there was a mistake, and plaintiffs have not only failed to prove that O'Brien knew there was a mistake when he took the deed, but, in view of the written contract of sale, the correctness of which they have not assailed, they have failed to establish that a mistake occurred on their own part.

The only ground of relief is an alleged mistake in the description in the deed of the land intended to be conveyed, and before equity will correct such mistake, unaccompanied with fraud, it must be clearly proven, and must be a mutual one. To correct a mistake, not mutual between the parties, would be in effect to make a contract for them. *Robinson* v. *Braiden,* 44 W. Va. 183; *Farrell* .v. *Farrell,* 53 W. Va. 515; *Pusey* v. *Gardner,* 21 W. Va. 469; see also *Dinman* v. *Providence &c. R. R. Co.,* 5 R. I. 130. Before a deed will be reformed for mistake, the evidence to establish it must be clear and convincing. *Kohen* v. *Kerns,* 47 W. Va. 575.

The testimony of witnesses as to the impressions, or opinions, Byrer may have had concerning the particular land intended to be conveyed, is hearsay, and altogether improper. He acted only as scrivener in drawing up the deed which was evidently prepared according to the written contract of compromise and sale. Plaintiffs themselves did not know the land and its surroundings, they had never been on it, and, of course, were not familiar with its boundaries. Therefore, it clearly appears that they are resting their case upon proof of facts and conditions which, although

they existed at the time, have become known to them since they made their deed to O'Brien. This makes their case very much weaker than it might otherwise have been, because, not knowing the land, how could they have been mistaken as to its boundary lines. The inference is that they described it by referring to another deed with metes and bounds, because that was the surest way of describing it, then known to them.

That a public road separates the 13.8 acres from the other portion of the 645 acres, and that, on the day after the deed was made to O'Brien, he sold the coal underlying all the land, except the 13.8 acres, are facts relied on by plaintiffs to prove that O'Brien knew that it was not plaintffs' intention to include in the deed any part of the McGinnis tract. But these are only circumstances tending to prove a fact, they are not inconsistent with O'Brien's claim that he knew the deed conveyed to him a part of the McGinnis tract, he had a right to sell any, or all, of his coal. These facts are not sufficient to overcome the presumption that it was grantors' intention to convey all the land in the bounds of the Rich deed, except the 150 acres not in dispute.

O'Brien has strung a wire fence around the McGinnis tract, and apparently claims the whole of it, by virtue of his deed from plaintiffs, but the decision of this case affects 13.8 acres only of the McGinnis tract, it being that part of it included within the boundary lines of the deed from Benjamin Rich to Melville N. O'Brien. Title to said 13.8 acres passed from plaintiffs to O'Brien, by virtue of their deed.

Bridget Caughlin is not a party to the bill, and, of course, her rights are not affected, no party to the suit seems to be claiming any part of her land, notwithstanding a part of it also is included within the boundary lines of the Rich deed.

It appears from the evidence that no part of any of the smaller tracts of land which Daniel O'Brien, after receiving his deed, conveyed to Joseph O'Brien, Lucy O'Brien, Maggie J. O'Brien Booth and George Booth, and to Melville N. O'Brien, lies within the McGinnis tract, and none of the coal conveyed to Lewis underlies any part of it, and hence, none of those parties was a proper party to the suit.

For the reasons herein stated, the decree of the lower court will be affirmed.          *Affirmed.*