# CHARLESTON.

### E. J. THOMAS, TRUSTEE *v.* U. B. YOUNG.

Submitted March 27, 1923.   Decided April 17, 1923.

1. MINES AND MINERALS—*Requisites of Acquiring Title to Coal Underlying Land Where Coal Separated from Residue of Land by Conveyance, Stated.*

   To acquire title to coal underlying a tract of land by adverse possession, where the coal has been separated from the residue of the land by conveyance, the claimant must show that his mining of the coal has been actual, open, notorious, continuous, exclusive and hostile, under color of title.  (p. 560).

2. DEEDS—*Reference in Deed Containing Only General Descrip-
   tion of Land to Another Deed Containing Description by
   Metes and Bounds has Same Effect as if Particular Descrip-
   tion Incorporated.*

   Where reference is made in a deed, containing only a gen-
   eral description of land, to another deed, which contains a
   description by metes and bounds, for the purpose of describ-
   ing the land intended to be conveyed, it has the same effect
   as if such particular description in the deed referred to were
   incorporated in the deed in which the reference is made.
   (p. 562).

3. MINES AND MINERALS—*Descriptions and Exceptions in Prior
   Deed, Referred to in Subsequent Deed to Describe Land Con-
   veyed, Deemed Incorporated in Subsequent Deed.*

   And where reference is made in a deed containing only a
   general description of the land, to a prior deed, which con-
   tains a description by metes and bounds, for the purpose of
   describing the land intended to be conveyed, and in such prior
   deed following the description there is a reservation or ex-
   ception of the coal and iron minerals underlying the land
   described both the description by metes and bounds and the
   reservation or exception are deemed to be incorporated in
   the deed in which the reference is made, and may be looked
   to to determine the property thereby conveyed. (p. 562).

4. SAME—*Grantee's Color of Title to Coal Excepted in Prior
   Deed, to Which Reference for Description of Land and Ex-
   ceptions Made. Determined in Ouster by Right of Recovery
   Under Warranty.*

   The grantee in the deed containing such reference can not
   be said to be vested with color of title to the coal and iron
   minerals so excepted or reserved. Under such a deed a fair
   test of the grantee's color of title to the coal, where the deed
   contains a covenant of general warranty, is determined by his
   right of recovery upon the warranty, in case of ouster,    (p.
   564).

5. DEEDS—MINES AND MINERALS—*"Survey" Cannot Operate· as
   Conveyance, or Exception, or Reservation of Land; Deed
   ·Conveying Property by Metes and Bounds as Part of Survey
   Made for Grantor out of Tract of Patentee Held not to In-
   corporate Reservation of. Minerals in Deed from Patentee to
   Grantor.*

   A "survey" is not a deed, nor can it operate as a con-
   veyance or exception or reservation oﬀ land; and a deed, con-
   taining a full description of land conveyed by metes and

bounds and geographical location, and which also recites that the property conveyed is a part of a "survey" of an 84¾ acre tract made for the grantor out of 47000 acres patented to one Bruen, a former owner of the land conveyed, can not be said to incorporate in it a reservation of minerals made in the *deed* of Bruen to the grantor. (p. 564).

6. MINES AND MINERALS—*Deed Containing Reference to Prior Survey for Description,* 'but not ' *Reserving or Excepting Minerals and Purporting to Convey Fee, Vests Color of Title to Minerals.*

Such a deed containing a reference to a prior survey for description, but containing no reservation or exception of the minerals under the land, purporting to convey the fee in the land, vests color of title to the minerals within and under the boundary conveyed. (p. 566).

7. SAME—*Operation of Coal Mine for 15 years Constitutes Adverse Possession. Vesting Operator With Fee-Simple Title to Coal Under Tract Embraced in Color of Title.*

Where for fifteen years, one mines the coal under a tract of land, under color of title, drives two entries into it, 500 or 600 feet in length, with work rooms off the entries, employs five or six miners with considerable regularity, builds no tipples or coal chutes but piles the coal mined in large quantities at or near the outside of the drift mouth, sells the coal to the public generally, openly and exclusively operates the mine during the seasons when he can find a market for the coal and stands ready at all reasonable times to furnish coal from the mine when there is a market therefor, his mining operations are sufficient to constitute adverse possession which vests in him the fee simple title to the coal under the tract embraced in his color of title. (p. 566).

Error to Circuit Court, Kanawha County.

Action by E. J. Thomas, trustee, against U. B. Young. There was a judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*J. B. Jones* and *P. H. Murphy,* for plaintiff in error.

*Elmer L. Stone, G. L. Hartley* and *A. M. Belcher,* for defendant in error.

MEREDITH, JUDGE:

Plaintiff seeks to reverse the judgment of the circuit court of Kanawha County in an action of ejectment which he instituted against U. B. Young to recover the coal underlying two tracts of land in Poca District. These tracts, one of 21 acres and the other of 11 acres, are contiguous and are part of a tract of 84¾ acres, the surface of which was conveyed by A. M. Bruen to Robert Young in 1856. In this deed the grantor, Bruen, excepted all of the coal and iron minerals, except such as might be required for the grantee's household and domestic purposes, and the plaintiff claims as a subsequent grantee of the mineral estate created by that reservation. He introduced in evidence several title papers in deraignment of his title to the coal, but since the parties have by stipulation agreed that their titles are derived from a common source, to-wit: A. M. Bruen, we need not review these instruments. Defendant's claim is, that because certain deeds in his chain of title either fail to make mention of the Bruen mineral reservation, or if mentioning it do so imperfectly, he, the defendant, by virtue of his extensive mining operations conducted on the premises under color of title, is vested with a fee title absolute in both the surface and the minerals.

Under the doctrine of *White Flame Coal Co. v. Burgess,* 86 W. Va. 16, 102 S. E. 690, a closely related case, these contentions give rise to the two issues which must be considered:

First. Has the defendant color of title to the coal underlying the two tracts?

Second. If he has color of title, has he had open, notorious, adverse, exclusive and continuous possesion of the coal for ten years prior to the institution of the suit by plaintiff?

We find that the circumstances are not identical with respect to the two tracts. It is therefore necessary to discuss them separately.

### THE TWENTY-ONE ACRE TRACT.

As before stated, counsel have stipulated that plaintiff's title to the coal under both tracts is deraigned from A. M.

Bruen. The title papers introduced in evidence indicate the correctness of that stipulation. Defendant's claim of color of title to the coal is founded on the following series of conveyances:

(a). By deed dated April 28, 1856, Alexander M. Bruen conveyed a tract of land on the waters of Two Mile and Tupper's Creek in Kanawha County, containing 84¾ acres, to Robert Young. The deed contains a description of the land by metes and bounds, which description concludes as follows: "excepting and reserving all the coal and iron minerals found in and upon said lands to the said Alexander M. Bruen, his heirs and assigns, with the right-of-way of ingress and egress necessary to the full enjoyment and use of this reservation and granting to the said Robert Young license to use such quantities of the said minerals as may be required for his household and domestic purposes."

(b). On May 19, 1876, Robert Young and wife conveyed to William Young all of "a certain boundary lying in Union District of said (Kanawha) County on a branch of Two-Mile Creek, west of the Great Kanawha River, the same being the residue of 84¾ acres A. M. Bruen survey to said Robert Young, which residue contains 71 acres, more or less." There follows a detailed description of the tract conveyed, and a special warranty of title, but no reference is made to a reservation or exception of minerals.

(c). William Young, on July 14, 1879, conveyed 34¾ acres, seemingly a part of the 84¾ acres, and so treated by counsel in this case, to John R. Jenkins. Following the last call in the description of the land conveyed, the deed concludes: "Containing 34¾ acres, with covenant of general warranty, reserving, however, from the operation of this deed all the minerals that was reserved in the deed from A. M. Bruen to the party of the first part."

It seems clear, and counsel agree in their briefs, that this 34¾ acres is a part of the 84¾ acre tract conveyed by A. M. Bruen to Robert Young, not to William Young, the "party of the first part" in the deed just quoted.

(d). John R. Jenkins died intestate about 1902, and by a partition decree his estate was divided among his heirs.

The decree was recorded March 21, 1903, and by it both the 34¾ acre tract and the 11 acre tract were assigned to Lena M. Franklin.

(e). By deed dated March 30, 1903, Lena M. Franklin conveyed the same two tracts to U. B. Young, the present defendant. The description of the 34¾ acres in that deed is as follows: "and the other lot said to contain 34¾ acres conveyed to John R. Jenkins by the said William Young and wife by deed dated July 14th, 1879, and recorded in said clerk's office in Deed Book No. 34, page 366." There is a general warranty of title, and no reservations or exceptions appear.

Defendant says these deeds afforded him color of title. Courts sometimes find it difficult to arrive at an appropriate definition of the phrase "color of title," but for present purposes we think almost any of those announced would be sufficient. In *Lewis* v. *Yates,* 62 W. Va. 575, 59 S. E. 1073 Judge Poffenbarger approved the following definition: "Color of title is that which has the semblance of title, but which in fact is no title, and is anything in writing, however defective or imperfect, purporting to convey title to the land, and which defines the extent of the claim"; and on one point there can certainly be no doubt: "A writing must, to give color of title, show an apparent transfer of title." *McNeely* v. *South Penn Oil Co.,* 52 W. Va. 631, 44 S. E. 513, 62 L. R. A. 562. Do the conveyances under which defendant holds apparently effect a transfer of the title to the coal to him? He holds immediately from Lena M. Franklin under the deed of March 30, 1903. What did he acquire thereunder? The description shows that he acquired the same tract, said to contain 34¾ acres, which was conveyed to John R. Jenkins by William Young and wife, etc. There is no other description. The effect of this is to incorporate in the deed to defendant the description of the property as found in the deed of William Young to John R. Jenkins, a common and unobjectionable practice. "Where reference is made in a deed, containing only a general description of land, to another deed or plat, which contains description by metes and bounds, for the purpose of describing the land intended to

be conveyed, it has the same effect as if such particular description in the deed or plat referred to were incorporated in the deed. 13 Cyc. 632; Tiedeman's Real Prop., sec. 605; *Snooks* v. *Wingfield*, 52 W. Va. 441; *Bank* v. *Stewart*, 93 Va. 447." *Crimm* v. *O'Brien*, 69 W. Va. 754, 73 S. E. 271. Looking then to the conveyance of William Young to John R. Jenkins, the important elements of which we have already noted, we find that it purported to pass title to a lot of 34 3/4 acres, describing it by metes and bounds. So far, under the rule that in order to give color of title, a writing must apparently transfer the title, certainly the grantee Jenkins, and therefore, the defendant Young, was vested with perfect color of title to the 34 3/4 acres. But, the deed to Jenkins further recited that there was reserved "from the operation of this deed all the minerals that was reserved in the deed from A. M. Bruen to the party of the first part." This reservation, or to be more exact, this exception, raises the real question in regard to defendant's color of title to the coal under the 21 acres. If it also is incorporated by reference into defendant's deed, it could not logically be said that he held the color of title which he claims. If the exception is not so incorporated, defendant was apparently vested with title to both surface and minerals and his color of title was complete when he entered the premises and conducted his mining operations thereon. Counsel naturally take opposite views. Succinctly stated, defendant's position is that when a deed refers to a prior conveyance for description, such reference is limited to descriptive purposes only, and for those we must look, in examining the prior deed, only to the descriptive words, those words which indicate the location of the property and the calls, courses and monuments which mark its boundaries. This argument is founded on the theory that such reference is for *descriptive* purposes only, and does not reach the kind of estate conveyed. In support thereof counsel remind us that the authorities on that question are collated under the heading "Description" in the various digests and texts. Counsel for plaintiff take a broader view. They argue that in referring to the prior deed for the description of his property, defendant was bound not only by

the language of that deed which shows the geographical location and the external boundaries of his tract, but by all the recitals therein which serve to identify and indicate the character of the estate which he received. This of course would include the exception of the coal and iron minerals.

We think plaintiff's view is the more reasonable. We do not agree that defendant, in examining the prior deed for the description of his property, which by law, insofar as description is concerned, is a part of his own conveyance, was bound only to look to the particular clauses which named the creeks near which his land lay and defined the courses of its horizontal boundaries. We think, with the plaintiff, that in looking to that deed he was bound to notice all of the language which served to mark and distinguish the ''lot said to contain 34 3/4 acres'' which he purchased. Defendant's grantor warranted generally the title to the property conveyed. Could we say, if the question were presented, that this warranty covered the coal and iron rights as well as the surface? We think the express exception of those minerals in the Jenkins deed would be considered as incorporated in defendant's conveyance and would refute the suggestion that the warranty covered those interests. We see no distinction in reasoning between such a case and the one at bar.

In *Getchell* v. *Whittemore*, 72 Me. 393, plaintiff held title under a mortgage from defendant and sued for possession of the lands in question. The mortgage described the property conveyed as the same premises which were conveyed to defendant by one, Hitchcock, by deed dated July 16, 1855. The deed referred to described a large boundary by metes and bounds, but contained also an exception of four lots out of the boundary, formerly conveyed to others. One of the four lots had been conveyed to defendant and was owned by him at the time of his mortgage to plaintiff and at the date of the action. The controversy involved this lot. The court held that plaintiff, the mortgagee, was not entitled to the excepted lot, and used the following language in the course of the opinion: ''It could hardly be possible that they would take a deed with such an exception, without the proper inquiry, and such inquiry made at legitimate sources alone,

would lead to certainty. Thus by the deed, aided by the records alone, it is easy to ascertain what was intended to be excepted." Somewhat similar are the cases of *Wilson* v. *Underhill*, 108 Mass. 360, and *Brown* v. *Rickard*, 107 N. C. 639.

We are of opinion that defendant has failed to show color of title to the coal underlying the 21 acres, and it is hence unnecessary to consider the nature of his possession or the extent of his mining operations.

## THE ELEVEN-ACRE TRACT.

Defendant's claim to the coal underlying this tract is based upon the same ground as his claim to the 21 acres, that is, adverse possession for the statutory period under color of title. However, his color of title is based upon a somewhat different chain of conveyances. As heretofore stated, the 11 acres adjoin the 21. They are both contained in the boundary of 84 3/4 acres conveyed by A. M. Bruen to Robert Young by deed of April 28, 1856, in which the coal and iron minerals were reserved. Subsequently, on May 19, 1876, Robert Young conveyed 11 acres and 67 poles to John R. Jenkins. That is the tract we are considering, and it passed, under the same partition decree which assigned the 21 acres, to Lena M. Franklin, and from her to defendant with the 21 acres in the conveyance of March 30, 1903. The latter deed describes the 11 acres as follows: "One tract containing eleven acres 67 square poles conveyed to John R. Jenkins by Robert Young and wife by deed bearing date 19th day of May, 1876, and recorded in the County Court Clerk's office of said Kanawha County, in Deed Book No. 31, at page 585." There is a general warranty of title, but no reservation or exception. The same principles as to incorporation of the descriptive recitals of a prior deed by reference in a subsequent one which we have announced with respect to the 21 acre tract apply to the 11 acres. We must look to the language of the deed of Robert Young to Jenkins:

> "Witnesseth: That in consideration of one hundred and fourteen dollars 18¾ cents the said parties

of the first part do grant unto the party of the second part all of a certain lot of land containing eleven acres sixty-seven square poles, situated in Union District, Kanawha County, on the waters of Two Mile and Tupper's Creek the same being a part of a survey for 84¾ acres made for said Young out of 47000 acres patented to A. M. Bruen with metes and bounds as followeth, to-wit: Beginning at a stake and pointers; on a ridge corner to the 84¾ acres running thence with new lines N. 66 E. 21 4/5 poles to a dogwood N. 8 E. 8 2/3 poles to a beach; N. 3 E. 15 1/2 poles to a black oak north side of a drain N. 2 1/4 west 30 poles to pointers on a flat part of the ridge in a line of the 84 3/4 acres survey thence with lines of the same, N. 79 E. 15 poles to a large locust on the east side of the ridge corner to James D. Thaxton S. 13 W. 17 3/4 poles to a large white oak on the ridge; S. 66 E. 26 3/4 poles to a chestnut oak, corner to a survey made for Jas. Craig and with his line S. 40 W. 33 poles to a beach S. 15 E. 24 1/4 poles to a locust and black oak on a line of a survey made for Thomas Jenkins; thence with his line N. 79 W. 44 poles instead of 34 poles to the beginning; and the said parties of the first part covenant with the party of the second part that they will warrant specially the property hereby conveyed.''

The most striking distinction between this conveyance and the conveyance of the 21 acres to Jenkins is the absence here of any mention of a reservation of minerals. Unless there is some other recital which would bring to the grantee notice of that reservation the deed would meet all requirements of the rule which requires that there be an apparent transfer of title, and the defendant's color of title to the coal would be clear. Defendant contends there is no such recital. Plaintiff contends there is. He points to the following phraseology:

"the same being a part of a *survey* for 84 3/4 acres made for said Young out of 47000 acres patented to A. M. Bruen'' etc.

We can not agree with plaintiff's view of the effect of this language. He claims that reference to Young's deed from

Bruen discloses that the "survey" contains no coal or iron minerals. This argument is fallacious for at least two reasons. In the first place, the deed of Young, to Jenkins makes no reference to a *deed* from Bruen to Young, but refers to a *survey* for 84 3/4 acres made for said Young by Bruen. Surveys are not deeds, never effect reservations and often do not show them. We think the reference to prior instruments must be more certain. "Of course the reference to such deeds or title papers must be specific. A reference in general terms to the records of the county for a description is without effect." 1 Jones, Law of Real Property in Conveyancing sec. 331. Our other ground for denying this argument is even more persuasive. Plaintiff would have defendant refer for the description of his property, first, to the deed to Jenkins, which is obviously proper, since defendant's own deed contains no description other than by reference, but he would then have the deed to Jenkins incorporated in itself the reservation of the minerals shown in the Young "survey" from Bruen. This is an impossible theory in view of the facts. The Jenkins deed contains a full description of the property by metes and bounds and geographical location. Why should defendant go further? There is no occasion for incorporation by reference, and we think none was intended. It occurs to us that the reference to the Young "survey" was as much, perhaps more, for the purpose of showing source of title as for descriptive purposes.

There being nothing in defendant's deed, or in the prior deed to which his deed referred for the description of the land conveyed, to indicate a reservation of the coal, we hold that his color of title is amply shown.

Defendant must, however, prove the additional circumstances of possession, of the necessary character, and for the statutory period of 10 years. We have already stated the elements of adverse possession. Defendant concedes them, and by the testimony of various witnesses relative to the mining operations which he conducted on the property, he attempts to show that his possession has been of the kind the law requires.

In considering the extent of these mining operations it is

imperative that we distinguish the operations on the 11 acres from the operaton of the 21 acres. The confusing statements of some of the witnesses render this task somewhat difficult. However, it seems clear that the 11 acres lie east of the 21 acres and that both tracts are east of the main county road, and are separated from it by a piece of land known as the Hector property. The mines are about a mile distant from the county road and can not be seen therefrom.

The first opening was made in January, 1904, on the 21 acre parcel, and quantities of coal, estimated by defendant at from 1800 to 2000 cars (mine cars of the capacity of 12 1/2 to 16 bushels) each year, were sold to many persons who lived in the neighborhood, and who hauled it to Charleston, seven miles distant, for resale. This character of marketing prevailed during the entire period covered by defendant's operations. The second opening was made in 1907, on a small tract which defendant had purchased from With Haynes. This entry was driven a distance of four or five hundred feet into the 21 and 11 acre tracts, piercing the larger tract first. Defendant says "I suppose there was about 200 feet back on the 12 (11) acre line", and further, "I was digging there until 1913 when I opened this other bank that I am working in now." The other bank to which he referred was the fourth, and apparently the last, opening. It also entered on the With Haynes parcel, but was driven "through the main body of the 21 and 12 (11) acre tracts." The length of this entry at the time of the trial was about 500 to 600 feet, and 27 rooms turned off from it. It was more extensively operated than any of the other entries, and coal was being mined therefrom when this action was brought.

There is a great deal of testimony as to the amount of coal mined and hauled. One witness gives as his opinion that the mining would average 20 days a month, 8 months a year since 1904. Another states that as many as 8 to 10 wagons were used in hauling at one time; another says he has seen as much as 500 mine car-loads piled at the drift mouth. Defendant testifies that he sometimes employed five or six pick miners in the operations.

No tipples or chutes were ever constructed, the coal being

hauled from the face of the mine in cars and dumped upon the ground for loading into wagons. The openings appear to have been typical country "wagon mines", and to have been operated at certain seasons of the year continuously from 1904 till this action was instituted in August, 1922. Since 1907 the mining seems to have been conducted on both the 21 and 11 acres, and in recent years the latter tract seems to have furnished the larger quantity of coal.

Though the mines are not visible from the main thoroughfare, the private road leading to them is easily noticeable because of the coal refuse scattered upon it. One circumstance touching the hostile and adverse character of these operations must be noted. In 1905, the Bruens, then the owners of the coal, who lived in a distant state, employed a Mr. Craig as their resident land agent. He was well acquainted with defendant, and more especially with the latter's father-in-law, G. W. Jenkins, who lived nearby. Defendant had commenced his mining operations at that time, and Craig not only protested against such operations, but threatened to institute injunction proceedings. He offered to lease or sell the coal rights of his principals to defendant, and corresponded with them concerning the situation. Nothing came of the protest, however, and Craig died some years later.

With this review of the facts, we think we are justified in concluding that defendant's possession satisfies all of the requirements. It has been actual, open, notorious, exclusive, hostile, continuous, and being also under proper color, of title has, prior to the institution of this action, ripened into an absolute fee simple estate in the coal underlying the 11 acre of land.

Defendant having failed to prove color of title to the 21 acres of coal, it follows that the trial court should have sustained plaintiff's motion for a directed verdict as to that tract, and its refusal to do so was error. We therefore reverse the judgment, set aside the verdict, and remand the cause for a new trial.

*Reversed and remanded.*