# CHARLESTON.

E. J. THOMAS, *Trustee et als. v.* WILLIAM HAYNES *et als.*

(No. 5200)

Submitted March 17, 1925.   Decided November 24, 1925.

INJUNCTION—*Temporary Injunction Should Not be Dissolved on Answers Not Legally Controverting Prima Facie Title Shown by Plaintiffs.*

A temporary injunction restraining the defendants from mining coal to which the plaintiffs have shown prima facie title, should not be dissolved upon the answers of the defendants not legally controverting such title.

(Injunctions, 32 C. J. § 716.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by E. J. Thomas, trustee, and others, against William Haynes and others, for an injunction. From a decree dissolving a temporary injunction, plaintiffs appeal.

*Reversed and temporary injunction reinstated.*

*J. B. Jones,* and *C. W. Dillon,* for appellants.

*A. M. Belcher,* for appellees.

LITZ, JUDGE:

The plaintiffs appeal from a decree of the court of common pleas of Kanawha county dissolving a temporary injunction restraining the defendants from mining coal claimed by the plaintiffs.

The plaintiffs, E. J. Thomas, Trustee, Charles B. Franks, C. A. McIntire, A. C. Stickel and E. J. Thomas, in his own right, seek an injunction against the defendants William Haynes, Honora O'Connor, J. G. Carpenter, Rufus Haynes, Daniel Haynes, James Holmes, W. C. Young, Jessie Jordon, Julia C. Whittington, Edwin Honaker, L. C. Harper and William Tate, perpetually enjoining them from operating or removing coal in or underlying certain lands, and to cancel the deeds under which they claim said lands in so far as the same may affect the title of the plaintiffs to the coal therein.

Being the owner of a 47,000 acre boundary of land in Kanawha county, A. M. Bruen many years ago conveyed numerous portions thereof to various persons; reserving, however, to himself "All the coal and iron minerals" found in and upon the land, with rights-of-way of ingress and egress necessary to the full enjoyment thereof, subject to the right of the grantee or grantees "to use such quantities of said minerals as may be required" for his or their household and domestic purposes. The defendants have acquired, through mesne conveyances, parts of the tracts so conveyed by said Bruen.

The bill charges that the plaintiffs, as grantees of A. M. Bruen's heirs, are vested with title to all the coal found in and upon a large area of the 47,000 acre boundary, including the parts which the defendants own subject to the reservation of the coal and iron; and that the defendants are, without right, mining and removing for commercial purposes the coal in and underlying the respective tracts which they own subject to the reservation of the coal and iron.

By answer to the bill the defendants assert title to the coal in question. The claim of each, based upon adversary possession, under color of title, will be considered separately, as follows:

(1)   William M. Haynes Title:

He claims (a) 75 acres conveyed to him by deed from Philip Edens, dated September 28, 1903, which excepts and reserves ''the coal and mineral interest, as is reserved by A. M. Bruen in his deed to Adam Littlepage heretofore made''; and (b) 54 acres under an alleged deed to him from George W. Tate, not exhibited.

(2)   Honora O'Connor Title:

She claims a life estate in 95 acres of land conveyed to her by William O'Connor by deed dated March 12, 1898, which refers to the land therein granted as the same tract conveyed to William O'Connor by Katy O'Connor and John O'Connor, Sr., by deed of record in the office of the clerk of the county court of Kanawha county, in Deed Book 76, page 590. The last deed refers to the land as ''about 95 acres more or less and for the metes and bounds, see Deed Book R, page 203, also see Deed Book 26, page 10, for further reference to said real estate''. The deed ''recorded in Deed Book 26, page 10'', (dated August 2, 1869), is from Tandy Tully and others to John O'Connor, and recites that for the metes and bounds of the 95 acres, more or less, of land conveyed, ''reference may be had to the original deed from said *Bruan* by his attorney to said Tandy Tully Senr. recorded in the clerk's office of said (Kanawha) county in Book R, page 203''. By deed dated January 9, 1851, and of record in said clerk's office in Deed Book ''R'', page 203, A. M. Bruen through Joel Ruffner, his attorney in fact, conveyed to Tandy Tully 144 acres of land, subject to the reservation of the coal and iron.

(3)   J. G. Carpenter Title:

He claims 53 acres of land, (part of a 73¾ acre tract) conveyed to him (by deed from Granville Carpenter and

wife dated January 29, 1922), as the same land granted to Granville Carpenter by deed from *Archibald* Legg and wife dated April 5, 1856, which conveys the 73¾ acres of land, subject to the ownership of the coal and iron by A. M. Bruen.

The answer of this defendant avers that a chancery suit was brought November 29, 1902, in the circuit court of Kanawha county in which the executors of A. M. Bruen obtained a temporary injunction against the defendants James G. and Elizabeth Carpenter, restraining them from mining and removing coal from said 53 acre tract, but that a later order was entered October 11, 1919, dismissing the cause. The papers in the alleged suit being in no way exhibited or made a part of the record, we cannot determine their legal effect.

### (4) Rufus Haynes Title:

This defendant claims in his answer 43½ acres of land which seems to be part of 234 acres of surface conveyed by A. M. Bruen to Preston Tate; but none of the deeds in the line of title, other than the one from Doctor H. Davis to D. A. Haynes, dated March 3, 1904, conveying 2 acres of the land, contain any references to preceding deeds confirming this fact. However, notwithstanding the defendant may have color of title to the coal in and underlying 41½ acres of the 43½ acre tract, the averments of adverse possession contained in his answer are wholly insufficient. These averments follow:

> "Your respondent further says that he is advised and verily believes and therefore charges the fact to be that the said plaintiffs well know that they cannot maintain an ejectment suit against him for the recovery of said property, because he says that they, and each of them, well know and have known for a number of years that the said coal has been openly, publicly and notoriously mined from and upon said property and sold and marketed therefrom for a large number of years in excess of ten years, next preceding the institution of this suit, and that the said respond-

ent has acquired many years ago, absolute fee simple title to the said property; and that they are merely ,trying to harrass and annoy your respondent by seeking an injunction against the further mining and selling and marketing of coal from said property.''

(5)   Daniel Haynes Title:

This defendant claims: (a) 35 acres conveyed to him by deed from John B. Haynes and wife, dated August 25, 1904, and describing the property as "the same conveyed by Preston Tate and wife to the party of the first part by deed bearing date the.........................and duly admitted to record in West Virginia Kan. Co. Court Clerk's Office in Deed Book No........., page........''', no other conveyance being referred to or exhibited; (b) 3 acres 85 poles, acquired by him through mesne conveyances from Lilly Bell McMillion and husband, who conveyed the same to John R. Haynes by deed dated March 28, 1898, as part of the land theretofore granted to her by deed from Preston Tate and wife dated November 14, 1885, but not exhibited, John R. Haynes having conveyed, by deed of February 12, 1921, to Robert J. Haynes, the mediate grantor of this defendant; and (c) 1½ acres conveyed to him by deed from John R. Haynes, dated January 16, 1922, and describing the property as "Being all the remaining portion of that certain tract of land containing 54½ acres, more or less, that was and is described in that certain deed made by Lilly Bell McMillion and husband to John R. Haynes, recorded in Deed Book 77, page 364''.

By decree of the circuit court of Kanawha county, entered March 18, 1912, in the chancery cause therein pending of *A. J. Bruen et al.* v. *Grant Tate et al.,* John R. Haynes was perpetually enjoined from mining or removing coal, except for domestic purposes, from 41½ acres, part of the 54½ acres, conveyed to him by Lilly Bell McMillion and husband.

The averments of adversary posession in the answer of this defendant are the same as those contained in the answer of the defendant Rufus Haynes.

(6)   JAMES HOLMES TITLE:

This defendant claims 36 acres (part of the 234 acre sur-
face tract conveyed to Preston Tate by A. M. Bruen) under
deed to him from R. J. Haynes, dated August 20, 1921, con-
veying 40 acres composed of 38 acres conveyed to R. J.
Haynes by deed from John R. Haynes, dated February 12,
1921, and 2 acres conveyed to said R. J. Haynes by deed
from John R. Haynes, dated October 31, 1916; the 38 acres
and 2 acres being parts of a tract of 41½ acres conveyed to
John R. Haynes by Lilly Bell McMillion and husband by
deed dated March 28, 1898, recorded in said clerk's office in
Deed Book 77, page 364. As noted above, under the Daniel
Haynes title, the deed from Preston Tate to Lilly Bell Mc-
Million, dated November 14, 1884, is not exhibited; and John
R. Haynes, under whom this defendant claims, was perpe-
tually enjoined from operating the coal.

(7)   W. C. YOUNG TITLE:

He claims 26 acres, under deed from his father, Simeon
Young, dated June 1, 1907, providing:

> "Party of the second part (W. C. Young)
> agrees and binds himself to help his father farm
> and to work for his father as he has heretofore
> the party of the first part (Simeon Young) is to
> have *possession* of said land during his natural
> life and at the death of the party of the first part
> the party of the second part shall have full pos-
> session of said property the party of the first part
> shall control said land as heretofore."

This land was conveyed to Simeon Young by deed from
John H. Young dated February 7, 1871, and describing it
as "being part of a lot of 70 acres John H. Young bought of
A. M. Bruen".

The answer of this defendant likewise contains only the
averments of adverse possession set forth in the answer of
Rufus Haynes.

(8)  EDWIN HONAKER TITLE:

He claims 49 acres under deed to him from America Honaker, dated January 4, 1921, but not exhibited. By deed dated April 7, 1896, Wythe Haynes and wife granted to America Honaker, inter alia, 51 acres, described therein as having been theretofore conveyed to the grantor "by Alexander Bruen by deed dated 28th day of April, 1856, recorded in book T, page 452 * * * excepting and reserving, however, from the operation of this deed any right that may have heretofore been reserved by A. M. Bruen or his executors relative to the mineral interest in either of said two tracts in any conveyance made by them".

(9)  JESSE JORDON TITLE:

This defendant claims 50 acres 84 poles, under deed from Chloe Young and husband, dated July 15, 1904, and describing the land conveyed as follows:

> "The same being the said Chloe A. Young's part in her father's estate as allotted and assigned to her by a decree of the Circuit Court of said Kanawha county, West Virginia, entered on the 13th day of March, 1903, in Chancery Record Number 26, at page 133, in the chancery cause of Reuben J. Jenkins against Burl E. Jenkins and others".

No further reference to the title is made in said deed nor are the papers in the chancery suit exhibited to show what estate was before the court for partition. Furthermore, the answer of this defendant contains no other averments of adverse possession than those heretofore noted in the answers of other defendants.

(10)  JULIA C. WHITTINGTON TITLE:

The defendant claims two tracts containing 8.4 acres and 3 acres 12 poles, under purchase from W. A. Thomas December 24, 1888. No deeds are exhibited. The allegations of adverse possession are that: "Since said property was purchased by her she has been in the exclusive possession, not only of the surface, but of the coal estate therein, which

coal estate has been continuously mined and hostile to the rights or claims of all persons whomsoever''.

### (11)   L. C. HARPER TITLE:

This defendant claims 51 acres under deed to him from Spicer Horn and wife, dated May 3, 1921, describing the land as the same conveyed to W. A. Beaver by deed from J. T. Beaver, dated September 19, 1903, and conveyed to Spicer Horn by deed from W. A. Beaver dated July 10, 1919. The deed from J. T. Beaver to W. A. Beaver refers to the land as having been conveyed to J. T. Beaver by ''Susan Beaver and Ed Beaver, her husband, bearing date the 20 day of July, *1803*''. No other deeds are exhibited.

The averments of adversary possession are the same contained in the answers of other defendants hereinbefore noted and are therefore insufficient. The answer further alleges that W. A. Beaver was a party to the injunction proceeding of A. J. Bruen et als, Executors of A. M. Bruen, *v.* Grant Tate et als, and that upon his filing an answer therein the suit was dismissed as to him. As this allegation is not supported by exhibiting the papers in that suit, we express no opinion with reference thereto.

### (12)   WILLIE TATE TITLE:

This defendant claims 54 acres, conveyed to him by Grant Tate and wife by deed of August 9, 1921. Grant Tate acquired title thereto by deed dated October 2, 1911, from W. M. Haynes. Neither of these deeds reserves any mineral interest or refers to any other conveyance in the chain of title. While the record shows that Grant Tate was one of the parties perpetually enjoined from mining coal, except for domestic purposes, in the suit of *A. J. Bruen et als, Executors etc.*, v. *Grant Tate et als*, it does not appear that the 54 acre tract was there involved. The allegations of adverse possession by this defendant are also insufficient.

\* \* \* \*

It will be observed: (1) that in most instances where the title of a defendant has been sufficiently exhibited, the deeds

purporting to convey fee simple estate incorporate, by refer-
ence, the preceding conveyances which except coal and iron.
The effect of this is to limit the color of title to the estate
conveyed by the former deed or deeds. *Thomas* v. *Young,*
93 W. Va. 555. (2) That even in the few cases where color
of title to the coal satisfactorily appears, adversary posses-
sion thereunder is not sufficiently averred.

Therefore the answers of the defendants attempting to set
up as new matter ownership of the coal by adversary posses-
sion under color of title, do not amount to a denial of the
bill of the plaintiffs, nor justify the court of common pleas
in dissolving the temporary injunction. The plaintiffs having
made out prima facie title which is not legally controverted
by proper pleadings, there were no such questions of fact
for determination by a jury as would deprive the court of
equity jurisdiction. Snyder on Mines, Sections 480, 481,
cited in *Porter* v. *Mack Mfg. Co.,* 65 W. Va. 636.

Under these circumstances we are of opinion, not only that
there is equitable jurisdiction, but further that the inclusion
of all the defendants in one suit for injunction does not
render the bill multifarious. "It is a general rule that sev-
eral independent tort feasors may be joined in an action in
equity for an injunction". 9 A. L. R. 952. "Where several
persons whose titles are separate and distinct and between
whom there is no conspiracy or concerted action, threaten
to do the same wrongful act they may all be joined as de-
fendants in one suit". 32 C. J. 303, note 18-(c), citing
*Delaware Etc. R. Co.* v. *Frank,* 110 Fed. 689, and *Nashville
Etc. R. Co.* v. *McConnell,* 82 Fed. 65, in each of which in-
junctions were awarded against several independent ticket
brokers restraining the purchase from passengers of partly
used tickets, non-transferrable by their terms, and their re-
sale for use in violation of the contract contained therein.
The defendants in this case are committing common acts of
trespass on the boundary of coal owned by plaintiffs.

The decree complained of is reversed and the temporary
injunction reinstated.

*Reversed and temporary injunction reinstated.*