**REMUDA OIL CO. et al.**

v.

**WILSON et al.**

No. 12610.

Court of Civil Appeals of Texas.

Galveston.

Jan. 7, 1954.

Rehearing Denied Feb. 4, 1954.

Harris & Harris, Bay City, Hugh G. Dunlap; Williams, Lee & Kennerly, Jesse J. Lee and Willard B. Wagner, Jr., Houston, for appellants.

Donald S. Owen, and Erickson, Bell & Keen, Bay City, Fred W. Waechter, Houston, Turner, Rodgers, Winn, Scurlock & Terry, Frank J. Scurlock, Dallas, and Fouts, Amerman & Moore, Jos. W. Moore, Houston, for appellees.

HAMBLEN, Chief Justice.

Appellees as plaintiffs in the trial court brought this suit in trespass-to-try-title to recover title to an undivided ½ of ¹¹⁄₆₄ non-participating royalty interest in the oil, gas and minerals in and under a certain 2012.92 acre tract of land in Matagorda County, Texas, and, in the alternative to reform a deed from American National Insurance Company to Gillette Hill. The trial court directed a verdict in favor of

appellees for title and possession of the royalty interest sued for and entered judgment accordingly.

Prior to February 25, 1944, American National Insurance Company owned the fee simple title to the 2012.92 acres in question. On that date it conveyed the land to M. G. Johnson and wife but reserved to itself a $\frac{1}{16}$ royalty in all the oil, gas and minerals produced from the land, said reservation being in the following language: "It is expressly agreed and understood that out of the grant hereby made there is excepted and reserved to the grantor, its successors and assigns, an undivided $\frac{1}{2}$ of $\frac{1}{8}$ of all the oil, gas and other mineral royalty in and under and that may be produced from the above described land (said $\frac{1}{2}$ of said $\frac{1}{8}$ royalty being a $\frac{1}{16}$ of all the oil, gas and minerals produced from said land)."

For brevity, the deed of February 25, 1944, from American National Insurance Company to M. G. Johnson and wife, which contained the reservation above set forth will be referred to as the Johnson deed.

On May 5, 1948, American National Insurance Company executed a royalty deed to Gillette Hill. It is under this deed that appellants hold title. Since the decision of this appeal depends upon the construction of the deed from American National Insurance Company to Gillette Hill, a copy thereof, omitting acknowledgments and other portions immaterial to our discussion, it hereto attached and made a part hereof as Exhibit A to this opinion for the purpose of clarity. It should be noted that all deeds out of Gillette Hill to the various appellants contain the same reference for all purposes to the Johnson deed as appears in Exhibit A.

Appellees hold under subsequent deeds from American National Insurance Company, which conveyed such interest as remained in that company after the deed to Gillette Hill.

On May 5, 1949, M. G. Johnson and wife executed leases upon portions of the 2012.92 acres, which provide for the payment of a royalty of $\frac{1}{4}$ of all oil, gas and minerals produced from the land and under certain circumstances for the payment of a royalty of $\frac{7}{16}$ of all oil, gas and minerals so produced.

Appellants' contention is that the deed from American National Insurance Company to Gillette Hill (Exhibit A), which will hereafter be referred to as the Hill deed, conveyed to Hill $\frac{1}{4}$ of any royalty that might be payable under any leases present or future.

Appellees, on the other hand, contend that the reservation to American National Insurance Company contained in the Johnson deed is the source of the titles of appellants and appellees and that the royalty deed to Hill conveyed only $\frac{1}{4}$ of $\frac{1}{8}$ royalty therein described, or a $\frac{1}{32}$ royalty which, they say, is the royalty to which Hill or those holding under him would be entitled regardless of the provisions of any present or future leases.

The litigants support their respective contentions in forceful and analytical briefs in which we feel safe in assuming all of the authorities which might be of assistance have been presented. None of the cited authorities, however, appear, from careful examination, to present factual situations identical or even strongly analogous to the facts in the present case. Our undertaking, then, is to apply to the facts here presented the general principles of law which we feel to be applicable and to reach a conclusion consistent with such principles. It is an undertaking which is not without difficulty and the conclusion reached is one as to which we are not entirely free from doubt.

Appellants base their appeal in this Court on two asserted points of error. First, they say the trial court erred in reforming the deed from American National Insurance Company to Gillette Hill as against them, and second, the court erred in failing to render judgment for appellants as to the royalties sued for. In their brief appellants cite authorities which they say support their first point. We find it unnecessary to pass upon this point or the ap-

plicability of the cited authorities for the reason that we find the Hill deed to be capable of that construction contended for by appellees without the necessity of reformation. The judgment of the trial court does not, by its terms, undertake to reform the deed but provides that appellees are to recover of and from appellants the title and possession of the royalty sued for. This, we think, is the correct judgment and should be affirmed.

■ The construction of a written instrument is a question of law. Basically, the problem is to ascertain the intention of the parties to the instrument. That intention is to be determined from the instrument itself when viewed in the light of the circumstances attendant at its execution.

The question here is not one of construing the deed for the purpose of ascertaining the type or nature of the estate conveyed; it is conceded by all parties that the deed conveyed a non-participating fee or perpetual royalty interest as that term is generally understood and as defined in the case of Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, and many other Texas cases. The litigants differ only in their claims as to the extent or quantum of such estate. Therefore, it is apparent that of primary importance in our inquiry is that portion of the instrument commonly referred to as the "description" which defines or identifies the thing with which the parties were dealing. By reference to Exhibit A, it will be seen that the description begins with the words, "An undivided ¼ interest in and to all of the oil royalty, gas royalty, etc.," and ends with the words, "reference to which deed is here made for all purposes." The real question is what did the parties intend by the use of the words, "all of the royalty," following the words, "an undivided ¼ interest in and to." Did they intend to convey ¼ of any royalty which might thereafter be provided for in future leases, regardless of amount, or did they intend by referring to the Johnson deed "for all purposes" to convey ¼ of the ⅛ royalty, ½ of which was reserved in the Johnson deed by American National

Insurance Company? We believe the latter intention is discernible. Appellants were, of course, charged with notice of the Johnson deed not only because it was a muniment in their title and of record, but also because it was expressly referred to for all purposes in the Hill deed, under which they hold. Inspection of the Johnson deed would disclose that American National Insurance Company owned by reservation ½ of ⅛ royalty. In the Hill deed there is described ¼ of "the royalty" and as a part of the description reference is made to the Johnson deed "for all purposes."

■ As a general rule, a general description in a deed will yield to the definite and particular description, and where the property conveyed is described in general terms and a reference is then made to another deed for a more particular description of the property, the description in the deed referred to becomes a part of the description and the purchaser must look to the reference deed to determine the extent of his acquisition. Tennent v. Caffery, 170 La. 680, 129 So. 128; Thomas v. Young, 93 W.Va. 555, 117 S.E. 909; Getchell v. Whittemore, 72 Me. 393; Thompson on Real Property, Vol. 4, Sec. 3082.

The case of Carter's Adm'r v. Quillen, 239 Ky. 583, 39 S.W.2d 1012, 1013, by the Court of Appeals of Kentucky, was a suit for breach of warranty. The deed to plaintiff conveyed with covenants of general warranty all merchantable timber standing on seven adjacent tracts of land described as being the same tract conveyed to plaintiff's grantor by deed recorded in deed book at given date and " 'to which reference is hereby made for a more definite and particular description of said lands and timber.' " The deed to plaintiff's grantor disclosed the acreage of the seven tracts and that mineral and timber rights in three of the seven tracts had previously been conveyed to other parties. The Kentucky court, after stating the general rule in the language above employed, held that reference to the prior deed disclosed that

the timber had been conveyed to other parties as to three of the tracts described, and that, therefore, the present deed disclosed an intention to convey only that timber which had not previously been conveyed and consequently there was no breach of warranty.

In that case the court noted that references to prior conveyances are made for varying purposes and that for such a reference to have the effect there held it must be clear that the reference is for the purpose of affording a definite description. In the present case the reference is "for all purposes," which would certainly include the purpose of affording a description of the property conveyed.

The general rule stated above has been recognized and frequently applied in Texas. In Steed v. Crossland, Tex.Civ.App., 252 S.W.2d 784, 785 (writ refused), the court considered a deed purporting to convey two tracts containing a total of 150 acres, more or less, wherein the description contained the following language: "It being the same land conveyed to me by B. W. Wilson of Caddo Parish, Louisiana, by deed dated December 5, A.D. 1917." The deed from B. W. Wilson to the grantor dated December 5, 1917, disclosed that B. W. Wilson in such conveyance retained all mineral rights. The court held that the reference to the previous deed put the grantee on notice thereof and that the deed under consideration even though it did not expressly except minerals, did not purport to convey to the grantee any mineral rights.

In Loomis v. Cobb, Tex.Civ.App., 159 S.W. 305, 307 (writ refused), the general rule is stated in the following language: "It is a familiar and thoroughly well-settled principle of realty law that a purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title. * * *"

In the solution of the problem of determining the intention of the parties to the instrument here under construction, we feel that some weight should be given to the proposition that the most usual royalty provided for in oil and gas leases is ⅛. In State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757, 761, the court makes the following statement: "The fact stated in the foregoing quotation, that the usual royalty in oil and gas leases is ⅛, is in our opinion one so generally known that judicial knowledge may be taken of it. Cheek v. Metzer, 116 Tex. 356, 291 S.W. 860, 862; Leonard v. Prater, Tex.Com.App., 36 S.W.2d 216, 220, 86 A.L. R. 499." In the case of Morriss v. First National Bank of Mission, Tex.Civ.App., 249 S.W.2d 269, 277, the court uses the following language: "We have no quarrel with the statement that a one-eighth out of production is the usual royalty, but we do not accept the non sequitur that any provision for a greater or different royalty is beyond the realm of agreement. The usual one-eighth royalty no doubt is one indicia of a royalty, and in the absence of a stated fraction, that fraction is regarded as the royalty meant; * * *. To interpret intent by what is usual is one thing, but to interdict the power to contract by what is usual is another."

In the last quoted case the court was confronted with a contention that as a matter of law royalty can only exist out of actual production and that a royalty cannot exceed a ⅛ of actual production, even though the parties clearly agree to a greater royalty. Our problem here patently is not the same. Ours is one of determining the intention of the parties, and the cited cases are authority for the proposition that the fact that ⅛ is the usual royalty is entitled to weight in determining intention. By this discussion we do not hold that the description "¼ interest in and to all of the royalty" when standing alone would be construed to mean "¼ interest in and to the ⅛ royalty" simply because ⅛ is the usual royalty. The opposite of such has been held by our Supreme Court in cases which appellants cite, but in none of the cases which appellants cite does the court hold that the description "¼ interest in and to

all of the royalty" when coupled with the reference to a deed "for all purposes", wherein it is disclosed that the grantor owns only ½ of ⅛ royalty, would not be construed to mean ¼ of such ⅛ royalty.

In Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563, 565, one of the cases cited by appellants, the Supreme Court of Texas uses the following language: *"Without any stipulation as to royalties* the interest thus conveyed would carry with it by operation of law the right to ¹⁄₁₂₈ of the royalties paid under any lease." (Emphasis added.)

Conversely, it would follow that if there is a stipulation, then such stipulation shall control, regardless of the royalties paid under any lease.

In the present case, the reference is to the Johnson deed "for all purposes." By virtue of such reference, appellants were required to look to the Johnson deed to determine the extent of their purchase. Such inspection would disclose that the grantor in the Hill deed did not own ¼ of any royalty that might be payable under any future leases. It owned only a fractional ½ part of a ⅛ royalty, which is less than ¼ of the royalty which, under certain circumstances, as payable under the terms of the leases to which the land is presently subject. It would be difficult to believe that the grantor in the Hill deed intended to convey an estate greater than it owned, after referring in that deed for all purposes to an instrument which disclosed the limits of its ownership. And equally difficult would it be to believe that appellants, required as they were to look to the reference deed to determine the extent of their purchase, could have thought that they were purchasing an estate greater than such reference deed disclosed that their grantor owned. To hold that such was the intention of the parties would result in a construction which plainly leads to injustice, and would produce unusual results.

In 18 C.J. at page 256, the rule is stated as follows: "Sec. 201.4. Avoidance of Injustice. Where a doubt arises as to the real intention, an interpretation which plainly leads to injustice should be rejected, and one which does not produce unusual and unjust results adopted, subject, however, to the rule that the intention is to be ascertained from the instrument." See also, 26 C.J.S., Deeds, § 82c, p. 322.

In Jasper State Bank v. Goodrich, Tex. Civ.App., 107 S.W.2d 600, 602, the court says: " 'In order to ascertain the intention of the parties in respect to the property conveyed, reference may be had to the state of facts as they existed when the instrument was made and to which the parties may be presumed to have had reference.' "

We resolve the doubts which we expressed earlier, by adopting that construction which does not produce unusual and unjust results, and which we believe to be ascertainable from the instrument.

We disagree with appellants in their contention that the reference to the Hill deed was made for the limited purpose of describing the land, as well as with their contention elsewhere made that the reference was for the purpose of limiting the grantor's warranty. The reference was expressly "for all purposes," which includes the grant, the royalty interest, the land and the warranty. The reference discloses that in the Johnson deed, American National Insurance Company reserved to itself ½ of ⅛ royalty. For the reasons hereinabove discussed, we construe the Hill deed to disclose an intention on the part of the grantor to convey, and on the part of the grantee to purchase, ¼ of that same ⅛ royalty.

The judgment of the trial court is, accordingly, affirmed.

*Exhibit A*

Royalty Deed
(Non-Participating)

The State of Texas } Know All Men By
County of *Matagorda* } These Presents:

That, American National Insurance Company, a Texas Corporation of Galveston, Texas

hereinafter called Grantor (whether one or more), for and in consideration of the sum

of Ten ($10.00) Dollars cash in hand paid by Gillette Hill, hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver, unto the said Grantee an undivided One-Fourth (¼) interest in and to all of the oil royalty, gas royalty, and royalty in casing-head gas, gasoline, and royalty in other minerals in and under, and that may be produced and mined from the following described lands situated in the County of Matagorda and State of Texas, to-wit:

Being 2012.92 acres of land, more or less, out of the Thomas M. Duke League, Abstract 29, Freeman George League, Abstract 40, and the Battle, Berry and Williams Survey, Abstract 3, and being the same land described in that certain deed dated February 25, 1944, from American National Insurance Company to M. G. Johnson and wife, Lillie Appelt Johnson, reference to which deed is here made for all purposes.

together with the right of ingress and egress at all times for purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom. This grant shall run, and the rights, titles and privileges hereby granted shall extend to Grantee herein, and to Grantee's heirs, administrators, executors and assigns forever.

Said lands, or portions thereof, being now under oil and gas lease executed in favor of the Superior Oil Company it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-fourth (¼) of all the oil royalty, and gas royalty, and casing-head gas and gasoline royalty, and royalty from other minerals or products due and to be paid under the terms of said leases. And it is further understood and agreed that notwithstanding the Grantee does not by these presents acquire any right to participate in the making of future oil and gas mining leases on the portion of said lands not at this date under lease, nor of participating in the making of future leases, should any existing or future leases for any reason become cancelled or forfeited, nor of participating in the bonus or bonuses which Grantor herein shall receive for any future lease, nor of participating in any rental to be paid for the privilege of deferring the commencement of a well under any lease, now or hereafter;

Nevertheless, neither the Grantor nor the heirs, administrators, executors and assigns of the Grantor shall make or enter into any lease or contract for the development of said land or any portion of same for oil, gas or other minerals, unless each and every such lease, contract, leases or contracts, shall provide for at least a royalty on oil of the usual one-eighth to be delivered free of cost in the pipe line, and a royalty on natural gas of one-eighth of the value of same when sold or used off the premises, or one-eighth of the net proceeds of such gas, and one-eighth of the net amount of gasoline manufactured from natural or casinghead gas; and in the event Grantor, or the heirs, administrators, executors and assigns of the Grantor, or as in the status of the fee owners of the land and minerals, or as the fee owner of any portion of said land, shall operate and develop the minerals therein, Grantee herein shall own and be entitled to receive as a free royalty hereunder, (1) An undivided one-thirty second of all the oil produced and saved from the premises delivered to Grantee's credit free of cost in the pipe line, (2) An undivided one-thirty second (⅟₃₂) interest and portion of the value or proceeds of the sales of natural gas when and while the same is used or sold off the premises, (3) An one-thirty second (⅟₃₂) of the net amount of gasoline or other products manufactured from gas or casinghead gas produced from wells situated on the premises, during the term hereof.

To Have And To Hold the above described property and rights, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Grantee, and to Grantee's heirs, administrators, executors and assigns, forever; and Grantor does hereby bind itself,

administrators, executors and assigns, to warrant and forever defend by, through or under it but no further all and singular, the said property and rights unto the said Grantee, and Grantee's heirs, administrators, executors and assigns, against every person whomsoever *lawfully claiming or to* claim the same or any part thereof.

Witness the following signature, this the 5th day of May 1948.