ACCEPTED
06-14-00100-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/28/2015 6:52:47 PM
DEBBIE AUTREY
CLERK

No. 06-14-00100-CV

_____

IN THE SIXTH COURT OF APPEALS
AT TEXARKANA

_____

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
8/31/2015 9:00:00 AM
DEBBIE AUTREY
Clerk

MARK  J. MUELLER,

Appellant

V.

JAMES H. DAVIS, Individually, and
JAMES H. DAVIS D/B/A  J. D. MINERALS, and JDMI, LLC.,

Appellee

_____

Appealed from the 71st District Court
of Harrison County, Texas

_____

APPELLANT'S REPLY BRIEF AND RESPONSE TO MOTION FOR SANCTIONS

_____

BOB WHITEHURST
State Bar No. 21358100
whitehurstlawfirm@yahoo.com
WHITEHURST & WHITEHURST
5380 Old Bullard Road, Suite 600-363
Tyler, Texas 75703
(903) 593-5588
(214) 853-9382 (facsimile)

ATTORNEY FOR APPELLANT

ASSIGNED FOR ORAL ARGUMENT

<u>IDENTITY OF PARTIES AND COUNSEL</u>

      In accordance with Rule 38.1(a) of the TEXAS RULES OF APPELLATE PROCEDURE, Appellant, Mark J. Mueller provides the following list of all parties, and the names and addresses of all counsel:

Appellant/Plaintiff:                                    Mark J. Mueller

Counsel for Appellant:                            Bob Whitehurst
State Bar I.D. # 21358100
Whitehurst & Whitehurst
5380 Old Bullard Road, Suite 600-363
Tyler, Texas 75703
Telephone: (903) 593-5588
Facsimile: (903) 297-1992

Appellee/Defendant:                              James H. Davis, Individually, and James H. Davis d/b/a J.D. Mineral and JDMI, LLC.

Counsel for Appellee:                             Douglas D. McLallen
State Bar I.D. # 00788025
1001 Third Street, Ste. 1
Corpus Christi, Texas 78404
Telephone: (361) 884-4981
Facsimile: (361) 884-1286

# TABLE OF CONTENTS

Identity of Parties and Counsel.................................................................................. ii

Table of Contents........................................................................................................ iii

Index of Authorities.................................................................................................... v

Statement of the Case................................................................................................. vii

State of Argument....................................................................................................... vii

Issues Presented in this Reply Brief.......................................................................... 1

    Issue No. 1:  The conveyances that are the subject of this appeal are
    ambiguous.

    Issue No. 2:  The conveyances that are subject of this appeal are tainted by
    fraud in the public record.

    Issue No. 3:  The Motion for Sanctions filed by Appellee is frivolous.

Statement of Facts....................................................................................................... 1

Summary of the Argument.......................................................................................... 1

Argument and Authorities........................................................................................... 2

    1.  The conveyances are ambiguous based on the fact that it is impossible
    to harmonize the provisions and give effect to all of the conveyances/contract's
    clauses, and as such the conveyance /contract is susceptible to more than
    one reasonable interpretation and is ambiguous........................................... 2

    2.  The conveyances in the public records are based on fraud, which vitiates
    whatever it touches ...................................................................................... 6

    3.  The sanctions motion filed by Appellee is without merit, based on the fact
    that from the viewpoint of the advocate filing the appeal he had reasonable
    grounds to believe the judgment could be reversed....................................... 14

Conclusion................................................................................................................... 19

Prayer...................................................................................................... 19

Certificate of Compliance........................................................................ 20

Certificate of Service............................................................................... 20

# INDEX OF AUTHORITIES

## CASES

*Angelou v. African Overseas Union*, 33 S.W.3d 269 (Tex. App.--Houston [14th Dist.] 2000, no pet.).    15

*Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983).    7

*BP AM Prod. Co. v. Marshall,* 342 S.W.3d 59 (Tex. 2011).    7

*Coker v. Coker,* 650 S.W.2d 391 (Tex. 1983).    4

*Cosgrove v. Cade*, No. 14-0346 June 26, 2015.    6

*D Design Holdings, L.P. v. MMP Corp.,* 339 S.W.3d 195 (Tex. App.--Dallas 2011, no pet.)    4

*Dorsett v. Cross,* 106 S.W.3d 213 (Tex. App.--Houston [1st Dist.] 2003, pet. denied).    4, 6

*Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806 (Tex. 1979).    7

*Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620 (Tex. 2011) (per curiam).    7

*Exxon Corp. v. Emerald Oil,* 348 S.W.3d 194 (Tex. 2011).    6-7

*Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310 (Tex. 2005) (per curiam).    2, 3

*Gard v. Bandera Cnty. Appraisal Dist.,* 293 S.W.3d 613 (Tex. App.--San Antonio 2009, no pet.).    14, 15

*Glassman v. Good-friend,* 347 S.W.3d 772 (Tex. App.--Houston [14th Dist.] 2011, pet. denied) (en banc).    15

*Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46 (Tex. App.--Dallas 2006, pet. denied).    4

*Hooks v. Samson Lone Star, Ltd., P'Ship* 457 S.W. 3d 52 (Tex. 2015).    2, 6, 7

*Innovate v. Tech. Solutions, L.P. v. Youngsoft, Inc.,* 418 S.W.3d 148 (Tex. App.--Dallas 2013, no pet.).     4

*J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223 (Tex. 2003).     4-5

*Lopez v. Muñoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857 (Tex. 2000).     2

*Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527 (Tex. 1987).     3-4

*Remuda Oil Co. v. Wilson*, 264 S.W.2d 192 (Tex. Civ. App.-- Galveston 1954, writ ref'd n.r.e.).     6

*Ruebeck v. Hunt,* 176 S.W.2d 738 (Tex. 1943).     6

*Tate v. E.I. Dupont de Nemours & Co.*, 954 S.W.2d 872 (Tex. App.-- Houston [14th Dist.] 1997, no pet.).     15

## RULES

*Black's Law Dictionary* 480 (9th ed. 2009).     10

No. 06-14-00100-CV

IN THE COURT OF APPEALS
SIXTH  APPELLATE DISTRICT OF TEXAS
AT TEXARKANA

MARK J. MUELLER
Appellant

v.

JAMES H. DAVIS, Individually, JAMES H. DAVIS D/B/A J.D. MINERALS AND JDMI, LLC.

Appellee

ON APPEAL FROM
THE 71ST JUDICIAL DISTRICT COURT
HARRISON COUNTY, TEXAS

**APPELLANT'S REPLY BRIEF AND RESPONSE TO MOTION FOR SANCTIONS**

TO THE HONORABLE JUSTICES OF THE SIXTH  COURT OF APPEALS:

Appellant, Mark J. Mueller files this Reply Brief and Response to Motion for Sanctions

of Appellant.  In this brief, Appellant will be referred to as Appellant.  Appellee James H. Davis,

individually, James H. Davis d/b/a J.D. Minerals and JDMI, LLC will be referred to as Appellee.

The 2015 Clerk's Record will be referenced as "(CLR")", being the Clerk's Record Volume 1,

Supplemental 2(A).

**STATEMENT OF THE CASE**

Appellant's "Statement of the Case" provided in Appellant's Brief properly

stated the case:  that appellant brought the action against the appellee in a suit to quiet title.

**STATEMENT ON ORAL ARGUMENT**

This court has previously decided that oral argument is necessary in this case.

## ISSUES PRESENTED

**Issue No. 1**:  The conveyances that are the subject of this appeal are ambiguous.

**Issue No. 2:**  The conveyances that are subject of this appeal are tainted by fraud in the public record.

**Issue No. 3**:  The Motion for Sanctions filed by Appellee is frivolous.

## STATEMENT OF FACTS

Appellant's "Statement of the Facts" provided in Appellant's Brief properly stated the facts of the case.

In paragraph 23 of its brief Appellee stated "Appellees acquired interests from Mills and Cope via conveyances in 1991. (CR 1826-1827 and CR 1828-1829)"  Appellee failed to state the numerous other facts that reflect that Appellee itself has in its possession and control documents substantiating that Appellee had not acquired the interests from Mills and Cope in 1991.

## SUMMARY OF THE ARGUMENT

The documents from Cope and Mills to Appellee are ambiguous based on the fact the documents can not be read to harmonize all the provisions in the documents.  Appellee prepared a document which allotted only one select sentence (in small print), to convey title to Appellee.  Meanwhile, all the other provisions and language (both in standard and small print) located in the document did not convey title to Appellee.  Appellee has chosen to disregard entire phrases in the document that indicate that it was not the intent of Cope and Mills to convey all the interest in Harrison County, Texas to Appellee.  Appellee has chosen to ignore the obvious and logical language of the documents in favor of an underhanded and fraudulent interpretation.

The public records through which Appellee claims title, are based on the fraudulent actions of the Appellee. Fraud vitiates whatever it touches. Appellee failed to disclose a great deal of information to Appellant and others when Appellee notified Appellant and others of its sudden claim to all the interests of Cope and Mills in Harrison County, Texas. Appellant prepared the documents to such an extent that the fraud was not discovered for years.

The Motion for Sanctions filed by Appellee is without merit. Not only Appellant, but many other lawyers, companies, and landmen, have paid money to Cope and Mills for their mineral interests in Harrison County, Texas. The suit to determine ownership of said property is the only legal way to ascertain who actually owns said property.

## ARGUMENT AND AUTHORITIES

## I.
## THE CONVEYANCES THAT ARE THE SUBJECT OF THIS APPEAL ARE AMBIGUOUS

Appellee contends that the documents from Cope and Mills to Appellee (CLR at 18, Tab A, and CLR at 21, Tab B) are unambiguous, and this court does not really need to look at the documents, to make a decision. This is not true nor is the question that simple. Texas courts recently addressed the necessity of examining the intent of the parties when interpreting contracts in *Hooks v. Samson Lone Star, Ltd., P'Ship* 457 S.W. 3d 52 (Tex. 2015). In *Hooks, at 63,* the court stated,

> In construing contracts, we must ascertain and give effect to the parties' intentions as expressed in the document." *Lopez v. Muñoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex. 2000) We attempt to harmonize all contractual provisions by "analyzing the provisions with reference to the whole agreement." *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). The courts continue to hold that contracts should be construed "from a utilitarian standpoint bearing in mind the particular business activity sought to be served,"

and, when possible and proper, we avoid a "construction which is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex. 1987)

In other words, the trial court should consider the entire document so that it may be able to determine the true intent of the parties.

In the case now before the court, the Appellee is asking that the court to accept that only the one provision, located in small print in the lower half of the documents. Appellee states that each document contains a specific survey description clause, a "Mother Hubbard" or habendum clause, and a county wide granting clause. (See No. 85) Appellee has admitted that this conveyance does not contain a metes and bounds description, and does not contain a volume and page reference to a prior document that was filed in the County Clerk's office of Harrison County, Texas. (CLR at 845, 851, No. 34 and No. 35, Tab C). As heretofore provided in Appellant's brief, that is in violation of the Statute of Frauds. Clearly Mills and Cope could have interpreted the specific survey description clause took precedence over the county wide granting clause since it appeared earlier in the document. It certainly appears that numerous other lawyers, companies, and landmen interpreted the clause that way, or why would they have paid money for years for either royalty payments, leases or mineral conveyance from Mills and Cope. (CLR 1732, 1733, 1735, Tab S) Accepting this Mother Hubbard clause as controlling, rather than the numerous other preceding provisions, flies in the face of established case law. The court will consider the entire writing and then attempt to harmonize and give effect to all its terms by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank,* 165 S.W.3d at 312. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *J.M.*

*Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003). Additionally, words appearing earlier in a contract generally have precedence over later appearing words. *Dorsett v. Cross,* 106 S.W.3d 213, 220 (Tex. App.--Houston [1st Dist.] 2003, pet. denied). Obviously, there exists a clear question concerning the proper interpretation of the documents. As stated above, numerous other lawyers, companies, and landmen have interpreted the clause differently because they have made payments to and executed other leases or mineral conveyance with Mills and Cope for years after the dates of the documents in question. (CLR 1732, 1733, 1735, Tab S)

If a court is unable to harmonize the provisions and give effect to all of a contract's clauses, the contract is susceptible to more than one reasonable interpretation and is ambiguous. *D Design Holdings, L.P. v. MMP Corp.,* 339 S.W.3d 195, 201 (Tex. App.--Dallas 2011, no pet.). *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 56 (Tex. App.--Dallas 2006, pet. denied) *Innovate v. Tech. Solutions, L.P. v. Youngsoft, Inc.,* 418 S.W.3d 148, 151 (Tex. App.--Dallas 2013, no pet.) When a contract is ambiguous, granting summary judgment based on the contract is improper. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983).

Appellee does not and has never claimed the Mother Hubbard or habendum clauses in the deeds conveyed anything to Appellee. (See No. 77 and No. 84) If that is indeed the case, and the 'cover all' clause is part of the Mother Hubbard of habendum clause, then the clause conveyed nothing. The granting language that Appellee refers to in No. 79, was actually part of the habendum clause, No. 81.

The Appellee is claiming title through a clause that was actually added to the habendum clause. (See actual clause in document at (CLR at 18, Tab A, and CLR at 21, Tab B) The

suspicious nature of this clause indicates an added need to carefully consider the document as a whole. First, the small font is used below to represent the actual font size in the documents, and where the clause that Appellee continually refers to, is actually located.

> The "Lands" subject to this deed also include all strips, gores, roadways, water bottoms and other lands adjacent to or contiguous with the lands specifically described above and owned or claimed by Grantors. If the description above process incorrect in any respect or does not include these adjacent or contiguous lands, Grantor shall, without additional considerations, execute, acknowledge, and deliver to Grantor, its successors and assigns, such instruments as are useful or necessary to correct the description and evidence such correction in the appropriate public records. Grantor hereby conveys to Grantee all of the mineral, royalty, and overriding royalty interest owned by Grantor in Harrison County, whether or not same is herein above correctly described.

This clause is quite difficult to read due to the font and print size. Second, this additional language, is not typical for a Mother Hubbard clause. Appellee has admitted that J.D. Minerals or its attorneys or representatives drafted some of the terms which make up the instruments, (Tab C, Clr 850, No. 27), that the documents contains print that is a different size font, (Tab C, Clr 851, No. 30), and the documents were prepared in the normal course of business. (Tab C, Clr 851, No. 33) In spite of the unusual nature of the clause, due to its location in the document, other people involved in the oil and gas industry have considered this 'cover all' clause as part of the habendum/mother hubbard clause, as reflected in royalty payments, and leases and mineral conveyances referred to above.

Appellee fails to address the fact that the documents also contain the language "Grantor agrees to execute any supplemental instrument requested by Grantee for a more complete description of said land. If it indeed was the intent of the original grantors (Cope and Mills) to convey everything they owned in the county, then why was such a clause in the document? The documents contain language that appellee does not rely on its claim of all the interest in Harrison County, which raises the question as to why that language was in the documents in the first place? These documents are clearly ambiguous when the specific granting clause does not convey any interest, and the habendum/mother hubbard clause does not convey any interest, and the only clause that does convey any interest was part of the mother hubbard clause. As set forth

in *Dorsett,* these clauses should have precedence over later appearing clauses, which again is ambiguous. Reading the document in its entirety and with the agreement to execute any supplemental instrument for a more complete description certainly indicates there was no intent on the part of either party to convey all interests in Harrison County to Appellee.

The existence of this contradictory clauses confirms the necessity of interpreting the document as a whole. The different clauses in the documents signed by Cope and Mills certainly cannot be harmonized together, and are thus ambiguous. On page 33 of its brief, Appellee cites the case stating, only when a deed is subject to two different reasonable interpretations should the court consider the circumstances surrounding its execution. *Remuda Oil Co. v. Wilson*, 264 S.W.2d 192 (Tex. Civ. App.-- Galveston 1954, writ ref'd n.r.e.) That is exactly what Appellant has done.

## II.
### THE CONVEYANCES THAT ARE SUBJECT OF THIS APPEAL ARE TAINTED BY FRAUD IN THE PUBLIC RECORD

Appellee states that Appellant had notice of the documents because they were on file in the real property records of Harrison County, Texas, and cites the June 26, 2015 case of *Cosgrove v. Cade, No. 14-0346.* However, the case at hand is vastly different.

First, the circumstances surrounding the execution of the documents, which were filed in the public records, signed by Cope and Mills are based on fraud. The Texas Supreme Court concluded that where public records are tainted by fraud, they provide no conclusive proof to establish a lack of diligence in the discovery of fraud. The court in *Hooks at 57* held:

> We have long held that "fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence might have been discovered." *Ruebeck v. Hunt,* 176 S.W.2d 738, 739 (Tex. 1943). Generally, "[c]auses of action accrue and statutes of limitation begin to run when facts come into existence that authorize a claimant to seek a judicial remedy," *Emerald Oil,*

348 S.W.3d at 202, but "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex. 1996).  Because "fraud vitiates whatever it touches," *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983), limitations does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it, *Marshall,* 342 S.W.3d at 69.

The court goes on further and discusses the issues of "when would reasonable diligence lead to the discovery of the wrong?  And who decides?" *Id.*  Normally a question of law, the accrual date for a cause of action has to be considered with the exercise of reasonable diligence which is a issue of fact.  *See, Etan Indus., Inc. v. Lehmann,* 359 S.W.3d 620, 623 (Tex. 2011) (per curiam) and *Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806, 809 (Tex. 1979).  According to *Hooks at 59*:

> Although reasonable diligence should examine readily available information in the public record, it may stop at more recent filings with the Railroad Commission, without needing to double-check more recent filings against earlier filings. This accords with our prior decisions. We have held that "fraud vitiates whatever it touches," *Borderlon,* 661 S.W.2d at 909, in this case, the public record.

In the matter at hand, the documents signed by Cope and Mills were not only tainted by fraud they were immersed in deception by the Appellee.  The Appellee has a pattern of deceptive and fraudulent business practices.  The following is from the business record affidavit from the Texas Attorney General office filed in this case:

> (1) letter to Texas Attorney General, stating in part "these guys were trying to trick her into selling the rights. . . ." (CLR 1905)

> (2) complaint to the Texas Attorney General, stating in part ". . . there was blatant fraudulent intent on the part of this company. . . ." (CLR 1908).

> (3) letter from bank vice president to Texas Attorney General, stating in part ". . . the first three appear to have offered far less than fair market value and the consideration for the last is unknown. . . ." (CLR 1911)

(4) letter to Texas Attorney General, stating in part ". . . J.D. Minerals is engaging in shameful, unscrupulous, and perhaps deceptive trade practices." (CLR 1912)

(5) letter to Appellee from attorney, stating in part ". . . Despite your firm's failure to honor the draft, your firm took action to file and record the Mineral and Royalty Conveyance in the real property records of LaSalle County, Texas. . . .." (CLR 1913)

(6) letter to Appellee from president of National Association of Royalty Owners, stating in part ". . . the directors have met an unanimously voted to terminate your membership. . . ." (CLR 1916)

(7) letter to Senator Drew Nixon from James Stafford, president of the Association of Royalty Owners, complaining about JD Minerals, stating in part ". . . contains the statutory language on the instrument as required, but the type size of the body of the conveyance has been reduced to a degree that anyone (particularly the elderly) with vision problems or a limited understanding of legal language would have a struggle getting through the whole thing." (CLR 1917)

(8) letter regarding JD Minerals, stating in part ". . . this company is trying steal people's royalty and minerals and they are praying on people especially the elderly, senior citizens. . . . (CLR 1919)

Additionally, the Appellee was sued by the State of Texas in cause No. GV003469, in the 53rd Judicial District Court of Travis County, Texas. (CLR 304-326). In part, the case alleged that Appellee violated the Deceptive Trade Practice Act. The following are excerpts from this petition that was sworn to by an Assistant Attorney General:

Section 5.1:

Defendants' conduct directly and indirectly affects the people of this state. For the year before May, 2000 Defendants sent out their unsolicited mailings to approximately 300,000 persons who owned mineral and/or royalty interests in Texas, and may have obtained up to 12,000 transfers of title in that time period alone as a result of their deceptive trade practices. Even, today Defendants continue their unlawful deceptive trade practices and continue to profit as a direct result of their enterprise;

Section 6.2:

In a significant number of cases Defendants' form of conveyance deceptively

failed to disclose the person was conveying all mineral or royalty interests owned within the county instead of just a specifically named tract. Defendants were also aware a number of persons believed the transaction was for a lease and not a sale of mineral or royalty interests because the enclosed draft was one-third to one-half of the appraised value on the tax rolls. Some, but not all, of Defendants' unlawful acts include deliberately deceptive and misleading language, the use of large print to suggest one transaction and the use of small print language totally restating the agree . . . .

These persons were induced to act upon Defendants' deceptive trade practices into transactions totally different from what they were originally led to believe.;

Section 9.2:

After Defendants have filed these deceptively obtained conveyances in the public records of the county where the interest is located, Defendants then sell the mineral or royalty interests to innocent third parties, use the interests as collateral or security for loans from their hometown bank, or retain the interests and pocket the money these interests generate. Thus, Defendants profit unlawfully from their unlawful deceptive trade practices;

Section 9.4:

Defendants have known all along that their intent after the conveyance was executed and recorded was to issue a check to the owner for a significantly lower amount. When this second offer was not accepted by an owner, most often Defendants refused to pay the original amount offered or to convey back the owner's mineral or royalty interest. Instead, Defendants claim they hold a valid conveyance of the individual's interest. Defendants disregard the obvious: The owner has never accepted the Defendants' counter offer, and thus there is no consideration to support the claimed conveyance. Defendants' claim of a valid conveyance is both a legal and a factual misrepresentation;

Section 9.5:

Another deceptive practice Defendants use inserts vague and misleading language in the solicitation letter or the conveyance which confuses an owner into believing the transaction involves a lease, and not a sale, of mineral or royalty interests. Defendants' unsolicited letter to an owner says Defendants have become aware of the interest the individual owns in the county, and Defendants are interested in adding that interest to their inventory in the area. The first clue the individual often" has that the interest has been sold, and not leased, is upon receipt of a change in ownership notice from a property management firm. Follow up attempts

to correct the mistake with the Defendants is met with either silence or derision. In either event, rarely *has* any owner had the interest conveyed back. Defendants' refusal to correct the mistake and to convey back the owner's interest is with, total awareness that many owners will make these very mistakes; and,

Section 9.6:

Defendants' deceptions continue with the use of even more vague and misleading language regarding the actual mineral or royalty interests they seek to acquire. In many instances, one part of the conveyance refers with a large font to a specific tract while another part, using a significantly smaller font, refers to all interests the owner has in the entire county. Individuals are deceived thereby into conveying all of the interests within the county.

The language in these allegations support Appellants' position that not only were the documents in question tainted in fraudulent practices, but it also shows the intent to deceive.

This lawsuit brought by the State of Texas alleging Deceptive Trade Practices was settled. The judgment that Appellee entered into with the State of Texas concerning the State's lawsuit alleging Deceptive Trade Practices, in part, provided (CLR 160-171) "The court further orders that plaintiff recover from defendants, jointly and severally, $250,000.00, as disgorgement pursuant to DTPA Sec. 17.47(a)" **Disgorgement** is defined as "the act of giving up something (such as profits illegally obtained) on demand or by legal compulsion." *Black's Law Dictionary* 480 (9th ed. 2009). As part of this settlement the Appellee, also agreed to a permanent injunction which prohibits the Appellee from performing certain acts:

A. Representing, directly or indirectly, to the public that this Judgment constitutes approval by plaintiff or this court of any of defendants' actions and business practices made the basis of this lawsuit;

B. Sending unsolicited mail consisting of a letter that includes a draft and/or form of conveyance to any individual(s) seeking to acquire or offering to purchase mineral and/or royalty interests from the owners:

i. That fails to identify with reasonable certainty, or in the same language, in both

defendants' letter and in the conveyance to be signed by the owner(s), the mineral and/or royalty interests sought to be acquired, which identification may purport to cover all of the owner's oil, gas and mineral interests in a named county ("County-Wide Conveyances");

ii. That fails to conspicuously disclose in defendants' letter, in all bold type face, capitalized and using a type point size which is at least the same as in the body of the letter, the following five statements (except to the extent to which any of these statements must be altered to comply with future changes in the law);

> (a) This letter is not an offer to lease or to renew a lease of your mineral and/or royalty interests; rather, this letter offers to buy all of the interest(s) you own as identified in this letter and the enclosed form conveyance;

> (b) We will not pay you for your mineral and/or royalty interest until we have received from you a properly executed conveyance, and verified your title;

> (c) We will not record your conveyance until we have paid you for it;

> (d) By executing and delivering this instrument you are selling all of your mineral or royalty interests in [Description of Property Being Conveyed, which may be a County-Wide Conveyance]; and,

> (e) The mineral and/or royalty interests sold includes all unpaid amounts attributable to owners' interests before, on and after the date of the conveyance and any ordinary and customary covenants of assurance grantors assume with respect to title;

iii. That includes any language within the conveyance, or seeking by any separate instrument, to appoint or constitute any grantee or other person to act as agent and/or attorney-in-fact on behalf of owners for any purpose, limited or otherwise;

iv. That permits defendants to approve, accept or reject the title described in the executed conveyance more than thirty banking days from the date the original writing an informed consent from grantor(s) extending the thirty day period for a longer and specific period of time. In this regard, any conveyance to grantees based in part upon an agreed time extension beyond thirty banking days must be paid by grantees with a new demand bank draft or check payable to grantor;

v. That fails to include in the original bank draft mailed to grantor(s) language which states conspicuously on the face of the bank draft: "On Drawee's approval and acceptance of title to the interest described herein, not later than 30 banking

days after arrival of this draft at collecting bank;" and

vi. That includes in a County-Wide Conveyance language which purports to include all of the owner's future interest and/or after-acquired title in and to such lands except as to those lands in which the owner had an interest as of the date of the conveyance.

C. Paying an owner less than the dollar amount stated in defendants' Conditional Draft accompanying their County-Wide Conveyances even though the owner may own a lesser interest in the county than that originally assumed by defendants. This prohibition shall not apply, however, if defendants discover that the owner presently owns no oil, gas or mineral interests in the county or if the parties negotiate a different amount.

The above permanent injunction, which Appellee signed, not only demonstrated the fraudulent and unethical business dealings which Appellee practiced prior to the lawsuit but it also specifically enumerated the various means Appellee repeatedly used to deceive mineral owners. The prohibition listed under section "i" describes exactly what happened to the Mills and Cope. Apparently, Appellee committed the same acts against other people.  It is noteworthy that Appellee admitted in his Answer to Admissions, No. 41 that the agreed judgment was in the best interest of the public) (CLR 852)

Appellee is now attempting to imply that he committed no fraud; however, based above listed prohibitions, it appears he has repeatedly committed similar acts of fraud.  Fraud is defined as "trickery or deceit," "intentional misrepresentation, concealment, or nondisclosure for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him," or "a false representation of a matter of fact by words or conduct . . . or by the concealment of what should have been disclosed that deceives or is intended to deceive another so he shall act upon it to his legal injury." Webster's Third New International Dictionary 904 (1986).  A person defrauds another if she takes or withholds from another "some  possession . . . by calculated

misstatement or perversion of truth, trickery, or other deception." *Id.* at 593; *Margraves v. State,* 34 S.W.3d 912, 923 (Tex.Crim.App. 2000) (Johnson, J., concurring)   It certainly appears that Appellee  attempted to deceive and/or trick Appellant and others in its letter of February 23, 2011, when it stated that it owned 100% of all Cope and Mills  interest in Harrison County, Texas, when Appellee failed also to inform Appellant and others of the other documents in its possession that reflected the following:

(1) the $235.00 draft to Ms. Cope was for various acres out the G.W. Petty Survey et al, not everything in Harrison County, Texas, (CLR 1133);

(2) the $55.00 draft to Ms. Mills was for various acres out the G.W. Petty Survey et al, not everything in Harrison County, Texas, (CLR 1207);

(3) the money order to Mr. Mills for $55.00 was for consideration for a one year primary term Royalty Conveyance, (CLR 1207);

(4) letter to Ms. Cope dated June 16, 2005, withdrawing offer, previously sold interest to another party, (CLR 358);

(5) attempted on November 21, 2005 to purchase mineral interest from Ms. Cope, (CLR 359);

(6) letter to Mr. Mills, November 26, 2007, are in the process of purchasing your interest, (CLR 364);

(7) obtaining permission from Ms. Cope to obtain information about her minerals, September 15, 2008, (CLR 361);

(8) letter to Ms. Cope, October 31, 2008, withdraw offer, sold interest prior to date. (CLR 1129);

(9) memo dated July 19, 2011, doesn't really matter because she sold all her interest already to another company, (CLR 363); and,

(10) knowing that Ms. Cope and Mr. Mills were part of the Moore # 1 Gas Unit, (CLR 916-918) The above documents clearly indicated that numerous individuals and business entities obviously thought that the mineral had not been conveyed. Yet, Appellee who were in possession and control of these documents, declined to produce these documents to the interested parties. Demonstrating further deception.

This case is not a situation where there is a plainly evident omission on an unambiguous deed's face, but rather a deliberate attempt to mislead. If there is a material omission, it is the result of an act of fraud. The conveyances from Ms. Cope and Mr. Mills were covered in fraud on the part of the Appellee. The Texas Attorney General has indicated that there are thousands and thousands of other individuals that have also been deceived by the Appellee, and would have similar documents, since Appellee have admitted that this document was prepared in the normal course of business. (Tab C, Clr 851, No. 33). To allow Appellee to succeed based on this fraud would appear to be a construction which is unreasonable, inequitable, and oppressive**.**

## III.
## THE MOTION FOR SANCTIONS FILED BY APPELLEE IS FRIVOLOUS

Appellee have filed a Motions for Sanctions based on the premise that Appellant has filed a frivolous appeal. This is not unusual in that the Appellee filed the same type of motion in the trial court. (CLR 1956).

Rule 45 of the Texas Rules of Appellate Procedure authorizes this court to award a prevailing party just damages if it is determined that an appeal is frivolous after considering the record, briefs, and other papers filed in this court. *Gard v. Bandera Cnty. Appraisal Dist.,* 293

S.W.3d 613, 619 (Tex. App.--San Antonio 2009, no pet.); TEX. R. APP. P. 45. Determining whether to grant sanctions for frivolous appeals is a matter of discretion this court exercises with prudence and caution. *Gard,* 293 S.W.3d at 619. In making that determination, we review the record from the viewpoint of the advocate filing the appeal and decide whether the advocate had reasonable grounds to believe the judgment could be reversed. *Glassman v. Good-friend,* 347 S.W.3d 772, 782 (Tex. App.--Houston [14th Dist.] 2011, pet. denied) (en banc).

Although imposition of sanctions is within our discretion, we may do so only in circumstances that are truly egregious. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 282 (Tex. App.--Houston [14th Dist.] 2000, no pet.) The objective factors to be weighed include the following: (1) failure to present a complete record; (2) raising issues for the first time on appeal, even though preservation of error was required in the trial court; (3) failure to file a response to a request for appellate sanctions; and (4) filing an inadequate brief. *Tate v. E.I. Dupont de Nemours & Co.*, 954 S.W.2d 872, 875 (Tex. App.--Houston [14th Dist.] 1997, no pet.)

Appellee's basis for claiming title to all the property in Harrison County of Cope and Mills is the blanket property description that it claims conveyed all the property to Appellee in 1991.

Appellee says the documents are unambiguous, which are basically plain on the face of the documents. This analysis is inaccurate.

Appellee fails to address that the conveyances themselves reflect that there never was an agreement to convey all the interests of Mills/Cope to Appellee. The conveyances found at (CLR at 18 and CLR at 21), state in part "Grantor agrees to execute any supplemental instrument requested by Grantee for a more complete description of said land." If it was not the intent of

the parties to convey only what they had specifically described, why would they have included a provision like this? In the alternative, if they had intended to convey everything they owned, a provision requesting supplementation would have been superfluous.

Appellee fails to address the language in the other clauses in the documents which is counter indicative to the claims of the Appellant.

Appellee fails to address why the blanket 'cover all' clause was made part of the Mother Hubbard Clause.

Appellee fails to address why the font in the blanket cover all clause was in such small print it is all but illegible to the naked eye.

Appellee fails to address the fact that Cope and Mills have leased and/or sold the minerals that Appellee claims since 1991, as reflected in the affidavit of Cope (CLR 983) and Mills (CLR 971), (Tab S - Appellant's brief, CLR 1732, 1733, and 1735).

Appellee fails to address the fact that Cope and Mills paid taxes on the minerals, as reflected in (Tab T - Appellant's brief, CLR 1744-1753).

Appellee fails to address the fact that the letter from Wagner & Brown, referring to the lawyers that examined title to the property, had concerns relative to the intent of the parties to these deeds, including vague descriptions which do not specifically reference as identifiable unit, or tract of land and the depths actually conveyed. In addition, they question if the provision dealing with conveying everything in Harrison County, is sufficient to do so, especially in view of the vague descriptions, since the courts have held that Mother Hubbard clauses which are in fine print, may only apply to small adjacent strips. (Tab N - Appellant's brief, CLR 932).

Appellee fails to address Exhibit "A" of the Declaration of Unit, Moore # 1 Gas Unit

which listed the names of the individuals included in said unit. (CLR at 916-918) On the third page of the document, it specifies: 1)the name of James Hammond Mills who leased to W. M. Beasley, Jr. on October 3, 1999; and, the name of Virginia Rose Mitchell Cope who also leased to W. M. Beasley, Jr. on October 18, 1999. (CLR at 918) This Declaration of Unit stated in part, "Winchester Production Company et al is the owner of the legal and/or equitable and beneficial title to oil, gas and mineral leases . . . ." (CLR at 916) This Unit of Declaration was produced by Appellee in his Response to Discovery is Bates stamped: DAVIS 92, 93, 94. (CLR at 916-918)

Appellee fails to address that on February 23, 2011, Appellee sent out a letter to several individuals including Appellant, stating in part "JD Minerals purchased 100% of all the interest located in Harrison County, Texas held in the names of Dan G. Capers, Virginia Rose Mitchell, and James Hammon Mills." (CLR at 356, Tab M) At that time, Appellee failed to disclose certain crucial facts concerning the true ownership of the mineral interest as set forth above and in Appellant's brief. For instance, Appellee did not reveal that he had sent a letter on June 16, 2005 to Virginia Rose Mills Cope a/k/a Virginia Rose Mitchell informing her that they were withdrawing their offer to pay $250.00 per net mineral acre, because upon further review of the title, they found that she had previously sold her interest to another party. (CLR 358, Tab G) At that time, Appellee also failed to disclose that he had sent a letter to Virginia Rose Mills Cope a/k/a Virginia Rose Mitchell on November 21, 2005, "offering to buy her mineral or royalty interest by identifying your interest, preparing the paperwork and paying you up front." (CLR 359, 360, Tab H) Attached to the November 21, 2005 letter was a Conditional Draft in the amount of $45.00. A closer review of this document reveals that, "This draft is drawn to pay for that certain Universal, County-Wide Sale, Conveyance and Assignment of Mineral and Royalty

Interests (the "Conveyance"), covering all of Grantor's royalty interests in HARRISON County, Texas." (CLR 359, Tab H)  Enclosed with this letter was a document entitled "Universal County-Wide Sale, Conveyance, and Assignment of Mineral and Royalty Interests. This document specified that it included "all (100%) of the oil, gas and other minerals, in, on and under, and may be produced, severed, sold and/or marketed from any and all lands" which included all mineral interests and royalty interests. (CLR 360, Tab H)  The first document, to the landowner, states it is a royalty interest and the second document, to be filed with the County Clerk, claims it is a *mineral* and royalty interest.  This is exactly the pattern and practice that Appellee has used over the years. Note the letter and draft are both signed by James H. Davis.

Appellee fails to address that in the letter of February 23, 2011, and at times subsequent, Appellee also failed to disclose that they had sent several other documents to Virginia Rose Mills Cope a/k/a Virginia Rose Mitchell indicating that Appellee was operating under the belief that she still owned mineral interests in Harrison County, Texas:

> Letter/form dated September 15, 2008, asking permission to obtain information as to all the mineral and royalty interest she owned in Harrison County, Texas. (CLR at 361, Tab K);

> Letter dated October 31, 2008, withdrew Appellee's offer to pay $7,260.00.  Stating, "in reviewing title information, JDMI, L.L.C. found you have sold your mineral and royalty interest prior to date." (CLR at 362, Tab L); and,

> Letter dated July 19, 2011, admitting knowledge that she had already sold all her interest already to another company. (CLR at 363, Tab R)

Appellee fails to address that in the letter of February 23, 2011, Appellee also failed to disclose that on November 26, 2007, they had sent a letter to James Hammond Mills stating they were purchasing his interest for $4,817.43. (CLR 364, Tab I)  These documents indicate that

Appellee thought Cope and Mills retained possession and control of their mineral interests in Harrison County.

Appellee fails to address the numerous admissions that Appellee admitted regarding allegations of fraud in the numerous lawsuits that had been filed against Appellee.

This Motion for Sanctions is without merit and it nothing more than a smoke screen to deflect this busy court from the legitimate issues that were earnestly presented by Appellant. There are numerous questions which this court needs to address. Appellant requests that this court deny the meritless sanctions motion.

<strong><u>CONCLUSION AND PRAYER</u></strong>

The trial court committed reversible error by issuing its Order Granting Defendant's Motion for Summary Judgment and Rending Final Summary Judgment. The Summary Judgment should be reversed and rendered for Appellant, or in the alternative should be reversed and remanded to the trial court, for issues of fact to be decided by the trier of fact. The Motion for Sanctions filed by Appellee is without merit and should be denied.

RESPECTFULLY SUBMITTED,

*/s/Bob Whitehurst*

Bob Whitehurst
5380 Old Bullard Road, Suite 600, #363
Tyler, Texas 75703
(903)593-5588
State Bar #21358100

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), Appellant certifies that this brief contains 7181 words and therefore complies with the word limitation imposed by Texas Rule of Appellate Procedure 9.4(i)(2)(B).

/s/Bob Whitehurst

Bob Whitehurst


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing instrument has been served on all counsel of record in accordance with the Rules of Civil Procedure on this 28th day of August, 2015.

/s/Bob Whitehurst

Bob Whitehurst